## Ivy *v.* State

No. 40309 December 17, 1956 91 So. 2d 521

L. W. *Brown,* Starkville, for appellant.

*John H. Price, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

McGEHEE, C. J.

The defendant, H. A. (Spike) Ivy, was tried, convicted and sentenced to serve a term of three years in the state

penitentiary on the charge of having committed an assault and battery on Carl Coleman, shooting him with a pistol, with the intent to kill and murder. The indictment was returned on May 21, 1956, the first day of the term of the Circuit Court of Oktibbeha County, the defendant was arrested on that day, and his trial was set for and held on May 23, 1956. The court term finally adjourned on Saturday, May 26, 1956.

On May 23, 1956, the defendant filed an application for a continuance to later day of the term or until the next term of court, in conformity with the requirements of Section 1520, Code of 1942, for obtaining a continuance. The motion set forth the date of the indictment, the date set for the trial, and an averment that Mrs. Louise Ivy, the wife of the defendant, had been subpoenaed as a witness in his behalf and that the process for her had been duly served. The motion was duly sworn to by the defendant and set forth that the witness, Mrs. Louise Ivy, "is not present because of serious illness, she now being a patient in the Felix Long Memorial Hospital of Starkville, Mississippi, and under the care and treatment of Dr. R. S. Ellis of Starkville, Mississippi, and said witness is unable to appear in court as a witness for the defendant"; that her testimony, if she were present at the trial, would not be cumulative and the facts that she would testify to could not be shown by any other witness; that she was not absent because of the defendant's consent or procurement, and that she would probably be available at a later day of that term of the court, or the next term thereof.

The motion further avers that "if Mrs. Louise Ivy were present, as a witness for the defendant, she would be able to, and would testify to the following: That on the date of the difficulty as charged in the indictment, she was with her husband, the defendant, and that the defendant wanted to discuss with Carl Coieman, the prosecuting witness, matters pertaining to insults made

by the said Carl Coleman to the daughter of the defendant, Miss Nora Lee Ivy, and that when the discussion started between the defendant and the prosecuting witness, Carl Coleman, several licks were passed and that Carl Coleman then made the statement that he would kill the defendant and the said Carl Coleman then reached to parts of his clothing in an effort to obtain a deadly weapon, whereupon the defendant, acting in apparent self-defense, protected himself from apparent bodily harm or death by shooting the prosecuting witness, and that the said Carl Coleman was the aggressor in the difficulty."

It is further averred in the motion that "Mrs. Louise Ivy was the only person present who had the opportunity to see the movements of the prosecuting witness, Carl Coleman, or to hear the threats made by said Coleman and no other witness can be had by the defendant to testify to such facts."

There was attached as an exhibit, and made a part of the motion for continuance, the affidavit of Dr. R. S. Ellis, who stated that "he is a licensed, practicing physician and surgeon in Oktibbeha County, Mississippi, being located in Starkville, Mississippi, and that he has as a patient for professional medical attention and surgery Mrs. Louise Ivy, the wife of H. A. (Spike) Ivy, and that Mrs. Ivy is now confined to the Felix Long Memorial Hospital in Starkville, Mississippi, and is unable to attend court at this time."

An order was entered by the court, which referred to the motion for continuance and the affidavit of the doctor in support thereof, and then recited that "the district attorney stated in open court that he would admit that Mrs. Ivy, the absent witness, would testify to the matters set out in the affidavit for continuance if present in court". The motion for the continuance was then overruled.

The assignments of error on this appeal are, first, that the trial court erred in overruling the motion for a continuance; second, that the trial court erred in admitting testimony to impeach a witness without proper predicate; and, third, that the trial court erred in overruling the appellant's motion for a new trial.

We are of the opinion that the second assignment of error is without merit, and that the question of whether or not the motion for a new trial should have been sustained depends upon whether or not the trial court had committed an error in overruling the motion for a continuance. The motion for a new trial complied with the procedure governing continuances as set out in Lamar v. State, 63 Miss. 265; Clanton v. State, (Miss.) 51 So. 2d 577; and Bone v. State, 207 Miss. 20, 41 So. 2d 347. We therefore confine the remainder of this opinion to the question of whether or not the defendant was entitled to a continuance of the case.

The testimony is in conflict as to whether or not the chief prosecuting witness, Carl Coleman, a boy 17 years of age, had on the previous day slapped the 15 year old daughter of the defendant while she and the witness were on a school bus enroute from the school at Sturgis to their respective homes, and as to whether or not she had given the witness sufficient provocation for his action and had dared him to slap her on account thereof. But it is undisputed that he did slap her.

At any rate, the defendant and his wife, Mrs. Louise Ivy, went to the village of Bradley on the next morning to intercept Carl Coleman and to talk over the incident with him, thinking that he would be on the school bus through Bradley enroute back to Sturgis. But it so happened that the regular school bus had broken down and that Carl Coleman in company with Jack Kyle had gone to Bradley in the latter's car and the defendant and his wife were there or appeared on the scene immediately thereafter.

It appears that Mrs. Louise Ivy approached and knocked on the window of the Kyle car, and then inquired as to whether or not Carl Coleman was in the car, and stated that "we want to talk to him"; that according to the State's proof Coleman got out of the car without having first noticed that the defendant was present; that the defendant came toward him "swinging" at and cursing him, that the witness Coleman backed off from him and to the rear end of the Kyle car, guarding off the licks that he claims were being struck at him by the defendant; and that finally when he was about ten feet from the defendant the latter drew his pistol from his pocket and shot the witness from the side as he turned; that the bullet entered near the middle of the back and tunnelled under the skin toward his left side from where the bullet was later removed, but that the defendant had fired one previous shot and missed him.

On the other hand, the defendant testified that the witness, Coleman, first began striking at him and that Coleman finally backed about ten feet away and placed his hand on his hip as if to draw a weapon; that thereupon the defendant's wife called to him and said, "He is going to shoot you," and defendant said "I beat him to the draw".

Jack Kyle, a companion of Coleman, who was driving the car in which they had gone to Bradley in order to catch the next school bus, did not see what occurred behind his car, where the shooting occurred. It was shown without dispute that after Coleman was shot and fell to the ground he had on him no weapon of any kind, and that the only articles on his person were two lead pencils; and Coleman testified that his hands were at his side at the time he was shot by the defendant. There was testimony by other witnesses on behalf of the State that after Coleman fell to the ground, the defendant walked up to him and said, "Now, damn you, try to slap someone else."

Mrs. Asa Nowell, a witness for the State, who owned

or worked at a store at Bradley, testified that she heard the defendant make the remark in substance, last above quoted, after Coleman had fallen to the ground, except that she said that the defendant's remark was, "Now, you son of a bitch, slap somebody else". She also testified that Louis Fleming, a witness for the defendant, had told her at the store on the night before defendant was going to kill Carl Coleman the next morning, and a predicate had been laid while Fleming was on the witness stand for this testimony of Mrs. Nowell given in rebuttal.

The defendant, as a witness in his own behalf, testified that he and his wife went to Bradley to talk with Carl Coleman about what had occurred between him and their daughter; and it is clear from his testimony that he and his wife expected that Carl Coleman would be on the school bus when it arrived at Bradley, and the jury could have reasonably concluded that when they found that somebody else other than the driver was in the Kyle car, Mrs. Ivy then went to the car to see if Coleman was in it, and if so, to tell him that she and the defendant wanted to talk with him; and that she did this in order to get Coleman to get out of the car and away from Kyle in response to her statement that she and her husband wanted to see and talk with Coleman. This circumstance was very damaging to the defendant's plea of self-defense, since it was later found that Coleman was wholly unarmed.

The testimony which the motion for a continuance set forth would be given by Mrs. Ivy if she were present as a witness, would have, in the main, been cumulative to that given by the defendant, but would have corroborated his own testimony. Then too, she may have been able to have given additional testimony as to the alleged threats and movements of Coleman immediately prior to the shooting, as indicated in his motion for the continuance.

Therefore the precise question presented to us for decision is whether or not he was entitled to have his wife present as a witness, notwithstanding the district attorney had agreed that if she were present, she would testify to the things set forth in the motion for continuance.

In the consideration of this question we are confronted with the recent decision in the case of Whittington v. State, 215 Miss. 377, 60 So. 2d 813, although the factual situations may be different, but wherein the Court said, in quoting from the case of Scott v. State, 80 Miss. 197, 31 So. 710, that ''a continuance should have been granted because of the absence of the witness Nelia Scott, the wife of the defendant, who had been duly subpoenaed * * * and was too sick to attend the trial. Whatever may have been the weight of her testimony with the jury whether much or little, it was certainly material and the accused was entitled to it.''

The absence of the defendant's wife as an eyewitness to the shooting rendered it necessary, under the foregoing circumstances, that he should take the stand and testify as a witness in his own behalf whether he chose to do so or not. Otherwise, the case of the prosecution would have stood undisputed as to how the shooting occurred.

Moreover, the application for continuance, duly sworn to and which was supported by the affidavit of the physician, made out a strong prima facie case for a continuance. The State neither called the process officer to inquire of him as to what the physical condition of Mrs. Ivy was when the subpoena was served on her on the day before the trial, nor did it call the physician as a witness to ascertain whether or not the contemplated surgery on Mrs. Ivy at the hospital was an optional or an emergency course of treatment. The shooting occurred in February 1956 and the trial was not had until April 23 of the year. In other words, the State did not offer any

proof or otherwise contest the issue of whether or not the application for continuance was in good faith. We must assume that it was, and although we are reluctant to reverse the trial judge in any criminal case when he is acting within his discretion as to the granting or denial of a continuance, nevertheless, we think that under the authority of Whittington v. State, supra, the continuance should have been granted in the instant case.

Reversed and remanded.

*Lee, Holmes, Ethridge* and *Gillespie*, JJ., concur.