368 So.2d 245 (1979)
Alonzo GARDNER
v.
STATE of Mississippi.
No. 50959.
Supreme Court of Mississippi.
March 7, 1979.
*246 Wilson & Hinton, Phil R. Hinton, Corinth, for appellant.
A.F. Summer, Atty. Gen., by Catherine Walker Underwood, Special Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, BROOM and BOWLING, JJ.
PATTERSON, Chief Justice, for the Court:
Alonzo Gardner appeals his conviction of aggravated assault upon a police officer for which he was sentenced to ten years imprisonment by the Circuit Court of Alcorn County.
About 10:00 p.m. on July 4, 1977, Policeman Larry Fuquay of Corinth answered a call which informed that someone was firing a gun in the southern part of the city. With this information he drove to the residence of Alonzo Gardner and knocked on the door. He received no response and departed.
Wayne Lowery and Randy Dickerson, police officers, were patrolling in the area about 10:30 p.m. when they heard a blast and observed someone carrying what appeared to be a long-barreled gun run into the apartment of Gardner. They also went to the door of his apartment, knocked, and receiving no response, departed. These officers then called the police dispatcher and requested a warrant for Gardner's arrest for discharging a firearm within the city limits. Upon arriving at the police station they signed affidavits and obtained the arrest warrant. There is no evidence they appeared before a magistrate for the warrant. The only testimony is that the dispatcher called a judge and obtained his approval for the warrant before the officers arrived at the station.
*247 Lowery and Dickerson, accompanied by Officer Fuquay, then returned to the Gardner residence where Officers Dickerson and Fuquay went to the rear of the apartment and Lowery to the front door. Lowery testified the following occurred:
I knocked several times and identified myself as a city policeman. And I didn't get an answer.
I knocked again, told him I was a city policeman. I hollered, "Alonzo, city police. I have a warrant for your arrest." He didn't answer.
So I kicked the door twice. The door come partially a way open. Had a night chain on it.
And Alonzo, from the inside  excuse the language  he hollered, "Who the hell is it"? I said, "City Police. I have a warrant for your arrest."
Well, I waited approximately five minutes; still no response from him. So I kicked the door.
The third time the door came open. As the door came open, I could see the light was still on in the kitchen and I could see a shadow of a man standing like that. And I just fell around behind the door facing. That's when the blast came by.
Lowery returned the fire, shooting once through the door and twice through a window. A second shot came from the apartment and Lowery fired into the apartment the fourth time. Officer Fuquay came to the front of the building and called for police reenforcements. Later, the firing having subsided, the officers entered and found Gardner lying in bed wounded. A shotgun was discovered in the living room with an empty shell in its chamber and another expended shell on the floor. A .22-caliber pistol was found on the night stand beside the bed in which the defendant was lying.
Officer Dickerson corroborated Lowery's testimony that he had identified himself as an officer prior to the opening shots, as did Billy Betts, a resident of the area. Officer Fuquay testified he was on the opposite side of the building and did not hear the identification.
Patricia Patterson was called as a witness for the state. After she testified that Gardner was not firing a gun on the afternoon or evening of July 4, the state moved to have her declared a hostile witness. A hearing out of the presence of the jury was conducted with the court permitting the witness to be cross-examined by the state.
Gardner testified he thought someone was breaking into his apartment and that he acted in self-defense. He elaborated that he had retired about seven o'clock and was awakened later in the night by his wife at which time someone was kicking the door to his apartment. He then walked into the living room and picked up a shotgun which accidentally fired as Lowery was breaking through the door. Mrs. Gardner, his wife, testified that she did not hear the officers identify themselves and generally corroborated her husband's testimony. She stated that although her husband had some wine during the day, he was not drunk. Both testified the only gun Alonzo had intentionally fired, apparently in celebrating the Fourth, was a blank pistol.
A signed statement taken from Mrs. Gardner by Captain Inmon of the police department was introduced to impeach her testimony. It revealed she had previously sworn that her husband had been drinking all day and that he started firing about ten o'clock that night.
Gardner contends he was erroneously convicted under Mississippi Code Annotated section 97-3-7(2) (Supp. 1978) because the officers were not acting within the scope of their duties when he was arrested due to a faulty arrest warrant. The statute provides:
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily *248 harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the penitentiary for not more than twenty (20) years. Provided, however, a person convicted of aggravated assault upon a law enforcement officer or fireman while such law enforcement officer or fireman is acting within the scope of his duty and office shall be punished by a fine of not more than five thousand dollars ($5,000.00) or by imprisonment for not more than thirty (30) years, or both.
We are of the opinion that Watkins v. State, 350 So.2d 1384 (Miss. 1977), is in point and controls this case. In it Watkins was arrested without probable cause. Enroute to the jail he obtained a shotgun from a rack in the patrol car and directed the officer to pull over. He then pointed the gun at the officer and pulled the trigger. Fortunately, the gun was not loaded and Watkins was later convicted of aggravated assault under Section 97-3-7. In affirming his conviction we held that although a citizen has a limited right to resist an unlawful arrest, nevertheless the right does not give liberty for indiscriminate and violent resistance. We stated some of the standards to be considered in determining the scope of the privilege, such as:
(1) The nature and location of the premises where the attempted arrest occurred:
(2) Inquiry as to whether the arrest was made with apparent legal authority as opposed to no claim of authority;
(3) The potential for violence and physical harm under the circumstances of the particular confrontation;
(4) Whether the force used in resistance was reasonable considering the above factors.
The Court did not find the officer was acting beyond the scope of his duty even though the arrest was without probable cause. See also Allison v. State, 274 So.2d 678 (Miss. 1973), and Wilkinson v. State, 143 Miss. 324, 108 So. 711 (1926).
We are of the opinion the trial court properly overruled the defendant's motion to dismiss at the conclusion of the evidence and in submitting to the jury the issue of whether Lowery had identified himself as a police officer and was acting within the scope of his authority. It is contended that the court improperly determined this issue. The record reveals, however, that it was submitted to the jury for its resolution. In Dotson v. State, 358 So.2d 1321 (Miss. 1978), we held this was the proper procedure and here the jury through its verdict of guilty resolved the issue from substantial facts.
Gardner next argues the court erred in admitting testimony that he had been drinking and had discharged both a pistol and a shotgun several hours prior to the time he fired through the door. The general rule is that proof of a crime distinct from that charged in the indictment should not be admitted into evidence against an accused. Cummings v. State, 219 So.2d 673 (Miss. 1969). There are, however, exceptions to this rule as noted in Floyd v. State, 166 Miss. 15, 148 So.2d 226 (1933), and which has been elaborated upon in Horton v. State, 288 So.2d 467 (Miss. 1974), as follows:
... [T]hat proof of such other crime is admissible if it sheds light upon the motive for the commission of the crime charged in the indictment. Tanner v. State, 216 Miss. 150, 61 So.2d 781 (1953). Proof that defendant is guilty of another crime is admissible when that fact (1) tends to show that the deceased officer had a right to arrest the appellant without a warrant, or (2) tends to show that the accused knew why he was being arrested, and therefore sheds light on the motive for the commission of the crime for which accused is being tried. White v. State, 70 Miss. 253, 11 So. 632 (1892). (288 So.2d at 468)
Presently, it was incumbent upon the state to prove that Lowery was an officer and acting within the scope of his duty in order to make its case of aggravated assault upon a police officer. It was established through the testimony that Lowery was an officer, whereupon the conduct of Gardner became relevant and material *249 to establish whether Lowery reacted reasonably and within the scope of his authority to the reports related to him or that which he observed concerning Gardner's conduct preceding his going to the apartment to make the arrest. We conclude this testimony was properly admitted into evidence.
The final assignment of error concerns the cross-examination of Patricia Patterson by the state. The general rule is that a party may not attack the credibility of a witness introduced by himself. Manning v. State, 188 Miss. 393, 195 So. 319 (1940). However, when a witness proves unexpectedly hostile to the party who has called him, he may be cross-examined provided a proper foundation for such is laid. In Hall v. State, 250 Miss. 253, 165 So.2d 345 (1964), we stated:
... Witnesses may be cross-examined or impeached by the party calling them when they prove to be hostile. Bove v. State, 185 Miss. 547, 188 So. 557; Rutland v. State, 170 Miss. 650, 155 So. 681, 156 So. 520. But a proper foundation must be laid in order to impeach a witness. The party must first show that the evidence as given, has taken him by surprise and that the witness is hostile. The witness may then be asked if he has made contradictory statements out of court, the times, places and circumstances of the statements being described to him in detail. Underhill's Criminal Evidence, Vol. 1, Fifth Edition, p. 547. (250 Miss. at 264, 165 So.2d at 350)
The state followed the procedure outlined for impeachment of its witness and established through her testimony that she had previously testified to the contrary. Under the circumstances and authorities we think this was not error.
We think it regrettable that Gardner's exuberance in celebrating the Fourth and the officers' zeal in pursuing a misdemeanor has resulted in a penitentiary term, but our review of the record and the authorities leaves no alternative but to affirm.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.