495 So.2d 481 (1986)
Zel THOMAS
v.
STATE of Mississippi.
No. 56394.
Supreme Court of Mississippi.
September 24, 1986.
Lee Calvin Buckley, Holly Springs, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and SULLIVAN, JJ.
DAN M. LEE, Justice, for the Court:

STATEMENT OF THE CASE
Zel Thomas appeals his conviction for simple assault on a police officer. Miss. Code Ann. § 93-3-7 (Supp. 1985). Thomas was tried October 25 and 26, 1984 and was *482 sentenced to five years in the custody of the Mississippi Department of Corrections, with two years suspended upon good behavior. His conviction followed an initial trial which ended in a mistrial.
Thomas appeals assigning two errors:

I.
THE TRIAL COURT ERRED IN ALLOWING, OVER OBJECTION, THE TESTIMONY OF THE STATE'S WITNESSES ROBERT E. NETHERCOTT, OFFICERS FLOYD JENKINS AND RAY RICHARDSON AS TO OTHER CRIMES (DISTURBING THE PEACE, ASSAULT), IF ANY OCCURRING AT THE RESIDENCE OF ROBERT E. NETHERCOTT, PRIOR TO THE OFFENSE FOR WHICH THE APPELLANT WAS INDICTED.

II.
THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE LAW.

STATEMENT OF THE FACTS
Zel Thomas had his annual back-to-school party July 1, 1983, on his mother's property in Nesbit, Mississippi. The party was outdoors on a baseball diamond and Thomas had live music with 150 to 200 people present. Robert E. Nethercott was a neighbor. He heard the music early in the evening and it was not objectionable at that time. However, after Nethercott went to bed the music seemed to get louder, preventing him from sleeping. Nethercott called the DeSoto County Sheriff's office to complain at least five times. After one of the calls, Sheriffs' deputies arrived at Nethercott's house with Zel Thomas. Nethercott said the initially cordial meeting rapidly deteriorated and Thomas became abusive, threatened Nethercott and had to be restrained by the deputies, who forced Thomas into the patrol car. Deputy Florida (Floyd) Jenkins stated it looked like Thomas "wanted to jump on [Nethercott]," and Jenkins' partner, Deputy Ray Richardson, grabbed Thomas by the arm and put Thomas in the patrol car to "keep them from fighting there."
Richardson and Jenkins returned Thomas to his mother's house. Thomas told the deputies to wait because he wanted to call the sheriff. Richardson and Jenkins waited at least 45 minutes, and when Thomas did not return, they left. Nethercott continued to hear the loud music, however, and went to a nearby grocery to meet Judge Perryman and several deputies where he swore out a complaint against Thomas for disturbing the peace. Judge Perryman issued a warrant for Thomas' arrest and several deputies went to the party to arrest Thomas. The circumstances surrounding Thomas' arrest created the only factual dispute in the case. The facts taken in the light most favorable to the state are these:
Deputies arrived and Jenkins and another deputy approached Thomas at the band stage and tried to serve the arrest warrant. Thomas didn't want to accept it but the deputies arrested him and placed him in the back seat of Jenkins' car. Thomas had been drinking. Jenkins had smelled alcohol on Thomas when they spoke with him earlier in the evening. Before Jenkins could drive off, someone asked if he could speak with Thomas about some financial arrangements for the party. Thomas had not been handcuffed because he had peaceably gone with police to the car. When Jenkins opened the door to allow Thomas to speak, Thomas jumped from the back seat, striking Jenkins in the head or face, bursting Jenkins' hat and knocking off Jenkins' glasses. Jenkins was not cut nor badly injured but Thomas stayed on top of Jenkins, hitting him and trying to grab Jenkins' gun. Jenkins tried to fend off Thomas by "tapping" him with his flashlight. Jenkins had trouble landing a blow but finally hit Thomas solidly. Thomas required 56 stitches on his forehead and over his eye as a result of the scuffle. Thomas fell to the ground where Deputy Danny Wilson was able to pin Thomas down and handcuff him. Thomas kicked Deputy Wilson in the back during this exchange. Thomas was taken later to the hospital for treatment. Deputy Donnie White transported *483 Thomas from the party and stated that Thomas threatened to kill the officers that "did him wrong." There was no evidence that Thomas had made good on his threat.
All of the state's evidence was corroborated in varying detail by testimony from at least one of the deputies at the party; Richardson, Wilson, Donnie White and former deputy Phillip Austein, although only Austein and Richardson corroborated Jenkins' account of who threw the first punch. In questioning Austein and Richardson about the first blow, defense counsel alluded to their testimony at the first trial being different, but their prior testimony was never presented to the jury.
The trial court noted that the situation could have been much worse had Thomas gained control of Jenkins' gun, and sentenced Thomas to the maximum sentence of five years with two years suspended upon good behavior.

I.

DID THE COURT ERR IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF OTHER CRIMES?
Thomas argues here that testimony concerning the arrest warrant signed against Thomas, and testimony concerning Thomas' confrontation with Nethercott was improperly admitted evidence of other crimes.
Our standard for addressing similar contentions is well settled and well known. In the oft-cited case of Gray v. State, 351 So.2d 1342 (Miss. 1977), this Court stated
It is well settled in this state that proof of a crime distinct from that alleged in an indictment is not admissible against an accused. There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. See Smith v. State, 223 So.2d 657 (Miss. 1969), cert. denied, 397 U.S. 1030, 90 S.Ct. 1274, 24 L.Ed.2d 542 (1970); Cummings v. State, 219 So.2d 673 (Miss. 1969), cert. den. 397 U.S. 942, 90 S.Ct. 954, 25 L.Ed.2d 122 (1970).
351 So.2d at 1345. See also, Graves v. State, 492 So.2d 562 (Miss. 1986)); Trunell v. State, 487 So.2d 820 (Miss. 1986); Griffin v. State, 482 So.2d 233 (Miss. 1986); Minor v. State, 482 So.2d 1107 (Miss. 1986).
The state correctly points out that it must be allowed to show that the arrest was legal, for this Court recognizes a limited privilege to resist an unlawful arrest. See Watkins v. State, 350 So.2d 1384 (Miss. 1977). This makes evidence of the underlying arrest warrant something akin to evidence of a series of criminal acts which must be proved to make out the offense. Gray, 351 so.2d at 1345.
There appears to be no question that evidence of the complaint by Nethercott, the issuance of the arrest warrant and the arrest of Thomas, all fall within the exceptions of Watkins and Gray. Only the evidence of Thomas' aggression towards Nethercott requires discussion.
The state cites Gardner v. State, 368 So.2d 245 (Miss. 1979), as controlling on this point. Gardner involved an aggravated assault on a police officer by the defendant who fired at officers as they attempted to serve an arrest warrant. Police obtained the warrant after hearing shots being fired and witnessing the defendant run into his apartment carrying a gun. The warrant was ultimately held invalid and this Court found no error in allowing testimony that the defendant had indeed fired weapons earlier in the evening. The state cites the following language:
Gardner next argues the court erred in admitting testimony that he had been drinking and had discharged both a pistol and a shotgun several hours prior to the time he fired through the door. The *484 general rule is that proof of a crime distinct from that charged in the indictment should not be admitted into evidence against an accused. Cummings v. State, 219 So.2d 673 (Miss. 1969). There are, however, exceptions to this rule as noted in Floyd v. State, 166 Miss. 15, 148 So.2d 226 (1933), and which has been elaborated upon in Horton v. State, 288 So.2d 467 (Miss. 1974), as follows:
... [T]hat proof of such other crime is admissible if it sheds light upon the motive for the commission of the crime charged in the indictment. Tanner v. State, 216 Miss. 150, 61 So.2d 781 (1953). Proof that defendant is guilty of another crime is admissible when that fact (1) tends to show that the deceased officer had a right to arrest the appellant without a warrant, or (2) tends to show that the accused knew why he was being arrested, and therefore sheds light on the motive for the commission of the crime for which accused is being tried. White v. State, 70 Miss. 253, 11 So. 632 (1892). (288 So.2d at 468).
Presently, it was incumbent upon the state to prove that Lowery was an officer and acting within the scope of his duty in order to make its case of aggravated assault upon a police officer. It was established through the testimony that Lowery was an officer, whereupon the conduct of Gardner became relevant and material to establish whether Lowery reacted reasonably and within the scope of his authority to the reports related to him or that which he observed concerning Garnder's conduct preceding his going to the apartment to make the arrest. We conclude this testimony was properly admitted into evidence.
368 So.2d at 248-49.
However, Gardner appears to us to stand for the proposition that the facts underlying probable cause may be introduced where there is a question as to the validity of the arrest or where it is necessary to demonstrate the accused knew why he was being arrested. Here the validity of the arrest was not questioned, and the state could have shown that Thomas knew the reason for the arrest without showing Thomas' threatening act toward Nethercott.
The state maintains that evidence of Thomas' animosity toward Nethercott demonstrates Thomas' "intent to `carry on' ... regardless of the circumstances." This conduct thus established Thomas' motive for the unprovoked attack on Jenkins by showing "Thomas' violent disposition toward those who dared to interfere with the evening festivities." The state's interest in "telling a rational and coherent story of what happened ..." Brown v. State, 483 So.2d 328, 330 (Miss. 1986) (citations omitted), also points to the admissibility of the incident at Nethercott's home, the state argues. We agree. In Brown, we stated that "[w]here substantially necessary to present to the jury `the complete story of the crime' evidence or testimony may be given even though it may reveal or suggest other crimes." 483 So.2d at 330. This statement was based on our decision in Neal v. State, 451 So.2d 743 (Miss. 1984). In Neal, this Court reviewed the defendant's felony murder conviction for the death of Amanda Joy Neal, the daughter of Neal's half brother. Neal confessed to this crime as well as to the murders of his half brother Bobby and Amanda Joy's cousin Melanie Sue Polk, and the attempted rape of Melanie Sue Polk. All of these crimes occurred during the same evening after the four went for a drive in Neal's car, though Bobby's death occurred sometime before the other crimes. Neal alleged it was error to allow the jury to hear the parts of his confession involving the other crimes. We stated that the state had a logical argument that the evidence was admissible to show Neal's motive to eliminate witnesses. 451 So.2d at 759. But we also said that "[b]eyond that, evidence of defendant's crimes against Bobby Neal and Melanie Sue Polk were admissible because they were integrally related in time, place and fact with the murder of Amanda Joy." 451 So.2d at 759.
*485 Like Neal the state's argument concerning motive and intent might be sufficient to sustain the trial court's decision. But as in Neal, we look beyond this rationale to the integral relation of the evening's events to the ultimate crime of simple assault on a police officer. Here the assault on Deputy Jenkins was related in time to the meeting at Nethercott's house. Both occurred on the same evening during the same precipitating event  the loud lawn party  separated by only a couple of hours. Though both incidents did not occur at the same exact place, both occurred in the general vicinity of the party. Finally, both incidents factually and logically are concerned with the lawn party. We hold there was no error in admitting testimony concerning the incident at Nethercott's house.
Eubanks v. State, 419 So.2d 1330 (Miss. 1982), does not require a different result. In Eubanks, this Court held that the trial court erred in allowing testimony concerning the underlying warrant. Eubanks, as here, involved a simple assault on a law enforcement officer. Conservation officers had obtained a warrant for Eubanks' arrest for reckless driving on state property, alcoholic beverages on state property, failing to yield to a blue light and resisting arrest. The incident giving rise to probable cause occurred on June 21, 1980. The same conservation officers present on June 21 stopped Eubanks to effect an arrest on July 4, 1980 but Eubanks resisted and officer Farlow testified that Eubanks kicked him three times. The Court stated this about the underlying facts supporting the warrant:
We are of the opinion Farlow's testimony concerning the warrant for reckless driving on state property, possession of alcoholic beverages on state property, failing to yield to a blue light and resisting arrest, was admissible to prove Farlow was acting within his authority to arrest Eubanks. However, it was error for the trial court to allow Farlow and Shoemake to testify as to the details of the incident at Lake Perry on June 21, 1980. There was no connection between the facts surrounding that incident and the charge of simple assault for which Eubanks was tried.
Id. at 1332.
This Court noted the exceptions to the general rule concerning evidence of other crimes but stated that the crimes of June 21 were not so connected to the assault of July 4 that they could not be separated.
We distinguish Eubanks because here we find the incident at Nethercott's was "integrally intertwined" with the assault on Jenkins, thus there was in fact a close connection here not present in Eubanks. Further, the Court in Eubanks made little reference to exceptions to the general rule concerning evidence of other crimes. Specifically, the Court in Eubanks did not discuss the possible alternative grounds for admissibility here of demonstrating motive and intent. For these reasons we hold Eubanks does not control us here.

II.

WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
We should start here by noting that determining the credibility of witnesses is uniquely a jury function. Anderson v. State, 461 So.2d 716 (Miss. 1984); Grosclose v. State, 440 So.2d 297 (Miss. 1983). As the state notes, this Court said in Billiot v. State, 454 So.2d 445, 463 (Miss. 1984), "the jury's decision based on conflicting evidence will not be set aside where there is substantial and believeable evidence supporting the verdict."
There can be no question that the case here presented conflicts in testimony. Thomas' version of the altercation with Jenkins varied substantially from the state's version. Yet, Thomas maintains the state's proof is inherently unbelieveable. He argues, in essence, that the testimony of officer Jenkins could not be believed because it is inherently unbelieveable that Thomas could have struck Jenkins hard enough to bust Jenkins' straw hat without somehow injurying Jenkins. We consider this assignment of error to be without merit as merely rehashing what was properly a *486 jury question on substantial and believeable evidence. The hat identified to be Jenkins' was before the jury who could have assessed the plausibility of Jenkins' story.
For the reasons stated, we affirm.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.