518 So.2d 1220 (1988)
William Glen PINSON
v.
STATE of Mississippi.
No. 57429.
Supreme Court of Mississippi.
January 20, 1988.
Michael G. Thorne, Moffett & Thorne, Tupelo, for appellant.
*1221 Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
William Glen Pinson was convicted of rape by the Circuit Court of Lee County, Mississippi, and sentenced to a term of twenty-eight (28) years in the custody of the Mississippi Department of Corrections. He now appeals for relief assigning as error the following:
I. That the trial court erred in denying Pinson a continuance when it was brought to the attention of the court that a material witness was suddenly unavailable;
II. That the trial court erred in overruling Pinson's Motion for a Mistrial based on the grounds that Pinson was greatly prejudiced by the unavailability of Lukuna Hadley, a material witness for the defense;
III. That the trial court erred in sustaining the state's objection to the testimony of Lucille Gillespie, one of Pinson's key witnesses; and
IV. That the trial court erred in overruling Pinson's Motion for a New Trial on the ground that the verdict of the jury was against the overwhelming weight of the evidence.
J.W., his wife, B.W., and his two children were neighbors of William Pinson. On the night of August 4, 1984, J.W. discovered the Pinson children unattended and took them to his own home. Later in the evening Pinson came to J.W.'s home and picked up his children and left. As soon as Pinson left, J.W. also left to find the children's grandmother. B.W. and her two children were asleep in the home when J.W. left.
B.W. testified that she felt someone in bed with her but believed it to be J.W., her husband. She testified that when the man moved on top of her she felt the texture of his hair and smelled alcohol and cigarettes on his breath and realized it was not her husband. She then began to kick and fight and pushed him off the bed.
When J.W. arrived back at his home he heard his wife screaming and went back to the bedroom, turned the light on, and grabbed Pinson as he was running out of the room. According to J.W.'s version of the events Pinson told him that he thought he was in his own house and because B.W. was so upset J.W. let Pinson go and went to calm his wife.
Pinson however testified that he never entered J.W.'s home and never saw B.W. that night.

I.

THAT THE TRIAL COURT ERRED IN DENYING PINSON A CONTINUANCE WHEN IT WAS BROUGHT TO THE ATTENTION OF THE COURT THAT A MATERIAL WITNESS WAS SUDDENLY UNAVAILABLE.

II.

THAT THE TRIAL COURT ERRED IN OVERRULING PINSON'S MOTION FOR A MISTRIAL BASED ON THE GROUNDS THAT PINSON WAS GREATLY PREJUDICED BY THE UNAVAILABILITY OF LUKUNA HADLEY, A MATERIAL WITNESS FOR THE DEFENSE.
Pinson moved for a continuance prior to his trial date due to the absence of his daughter, Lukuna Hadley. Pinson had taken Lukuna and his other children to visit with their mother and she subsequently disappeared with the children. The trial judge ordered an instanter subpoena for both Lukuna and her mother but refused to continue the case.
At the close of the State's case Pinson renewed his motion on the grounds that Lukuna was still absent and that the defense would be greatly hampered if they were unable to examine Lukuna as a witness. Again the motion was denied for the following reasons:
THE COURT: Counsel, a review of the record indicates that no subpoena was ever requested for these  for that witness or for her mother to insure that she *1222 would be here. Likewise, there was no required affidavits and motion filed with the court before your motion for a continuance yesterday. I denied this request yesterday, but I assured you that I would make available to you the services of the Lee County Sheriff's Department and have them contact the Chickasaw County Sheriff's Department or whatever county that is  where Vardaman is  to locate your witness. That was done. I am not going to continue this case.
Mississippi Code Annotated, § 99-15-29 (1972), provides the following:
On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance, in its discretion, and may of its own motion cross-examine the party making the affidavit. The attorneys for the other side may also cross-examine and may introduce evidence by affidavit or otherwise for the purpose of showing to the court that a continuance should be denied. No application for a continuance shall be considered in the absence of the party making the affidavit, unless his absence be accounted for to the satisfaction of the court. A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom.
Mississippi Code Annotated, § 99-15-29 (1972).
As a general rule the granting of a continuance is a matter in the sound discretion of the trial judge and we will not reverse on the refusal to grant a continuance in the absence of an abuse of discretion. Gates v. State, 484 So.2d 1002, 1006 (Miss. 1986).
Pinson argues that Lukuna was in his custody until the weekend before trial and had been available to testify at the last term of court and that he had every reason to believe that the child would be present at this trial. Pinson stresses that Lukuna was available during the last term when the State was granted a continuance due to the unavailability of its key witness, J.W.
Pinson did not discover that Lukuna would be unavailable until the evening before trial and it was impossible for him to issue a subpoena and he could not issue the affidavits required by the statute. This to Pinson, constitutes an abuse of discretion.
Carter v. State, 473 So.2d 471 (Miss. 1985), cited by Pinson does not help him. The conviction there was reversed for the failure to grant a continuance, however, a subpoena had been issued for the witness in the Carter case.
Pool v. State, 483 So.2d 331, 335 (Miss. 1986), does not entitle Pinson to any relief either. In Pool, as in this case, the motion for continuance failed to meet the requirements set out in our statute and cases, finding no abuse of discretion. We declined to reverse. Pool, 483 So.2d at 336-37.
In Ivy v. State, 229 Miss. 491, 91 So.2d 521 (1956), we did reverse for denying a continuance where the witness sought was the only witness that could verify the defendant's version. But in Ivy the application for continuance conformed with the then applicable statute and the motion was supported by affidavits. Such was not the case here.
Because Pinson did not follow the statutory and case law requirements; did not issue a subpoena for Lukuna or her mother and did not present Lukuna or her affidavit when he moved for a new trial; because there is nothing in the record to support a granting of a mistrial, and it does not appear that the denial of the continuance resulted in a substantial injustice to Pinson; these two assignments of error are without merit.

*1223 III.

THAT THE TRIAL COURT ERRED IN SUSTAINING THE STATE'S OBJECTION TO THE TESTIMONY OF LUCILLE GILLESPIE, ONE OF PINSON'S KEY WITNESSES.
At trial the defense called Lucille Gillespie as a witness and the state objected to her testimony. Outside the jury Pinson's attorney stated to the court that he offered this witness to impeach J.W. because J.W. had testified that his marriage had broken up because of the rape, that he was living apart from his wife and was not living with any other woman. The witness was offered to show that J.W. was in fact living with another woman and therefore, his credibility was suspect.
The trial court sustained the State's objection on the ground that it would be impeachment on a collateral matter which was impermissible.
Pinson argues that the Gillespie testimony was relevant not only to impeach J.W. but to supply a possible explanation for the emotional state of the victim on the night of the rape and during her courtroom appearance.
The sole support for this argument are the Mississippi Rules of Evidence, Rule 405 (1985). Rule 405 provides as follows:
(a) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry if allowable into relevant specific instances of conduct.
(b) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
Pinson offers no case law in support of this argument and furthermore, Rule 405 is only applicable after admissibility of character evidence is established under Rule 404 which refers the reader to Rule 607 through 609. Rule 608 is the impeachment rule applicable here; it provides:
(a) Opinion and Reputation Evidence of Character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.
Specific instances of conduct under our Rules of Evidence may not be proved by extrinsic evidence for impeachment purposes; they may only be inquired about on cross-examination. J.W. denied seeing any woman other than his wife when he was questioned about it on cross-examination. The defense may go no further.
Also, J.W.'s post-rape fidelity or infidelity is collateral and therefore irrelevant. Barnes v. State, 152 Miss. 250, 119 So. 172 (1928). Based on the Rules of Evidence and the case law this assignment of error is without merit.

*1224 IV.

THAT THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR A NEW TRIAL ON THE GROUNDS THAT THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Pinson argues that it is virtually impossible for all the things that J.W. and B.W. testified to to have occurred in the five minute interval that J.W. said he was away from the home. Pinson also argues that J.W. and B.W.'s children were asleep in the bedroom across the hall yet never awakened while B.W. was allegedly screaming.
The evidence is conflicting in this case and five minutes does seem a rather short time for all that the State alleges to have transpired. But "The jury is the sole judge of the credibility of the witnesses and the weight and worth of their testimony. They may believe or disbelieve, accept or reject the utterance of any witness. Smith v. State, 463 So.2d 1102 (Miss. 1985); Campbell v. State, 278 So.2d 420 (Miss. 1973)." Campbell v. State, 480 So.2d 1161, 1162 (Miss. 1985).
It is not our function to determine whose testimony to believe. Thomas v. State, 495 So.2d 481 (Miss. 1986); Anderson v. State, 461 So.2d 716 (Miss. 1984); and Groseclose v. State, 440 So.2d 297 (Miss. 1983).
We will not disturb a jury's finding on conflicting testimony where there is substantial evidence to support the verdict. Billiot v. State, 454 So.2d 445 (Miss. 1984); Thomas v. State, 495 So.2d 481 (Miss. 1986). Furthermore the evidence is considered by this Court in the light most favorable to the verdict. Fisher v. State, 481 So.2d 203 (Miss. 1985), and Inman v. State, 515 So.2d 1150 (Miss. 1987).
We are of the opinion that the jury verdict in this case is not against the overwhelming weight of the evidence.
There is no merit to Pinson's unsupported arguments that lack of consent and use of force were not proven. The suggestion that B.W. responded to Pinson's actions while believing him to be her husband and because penetration occurred before she realized the man in her bed was not her husband makes the act something less than rape is ludicrous. The fourth assignment of error is without merit.
William Glen Pinson's conviction of rape and twenty-eight (28) year sentence in the custody of the Mississippi Department of Corrections are therefore affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.