749 So.2d 1152 (1999)
Charles David ALLEN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01450-COA.
Court of Appeals of Mississippi.
August 3, 1999.
*1154 Robert H. Koon, Gulfport, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
LEE, Judge, for the Court:
¶ 1. The indictment charging Charles David Allen with the capital rape of his thirteen year old stepdaughter, ML, on September 14, 1992, pursuant to Mississippi Code Annotated, section 97-3-65(1), as amended was filed with the Circuit Court of Harrison County on April 16, 1993. He was found guilty of the charge and was sentenced to life imprisonment. On appeal, Allen contends that: (1) he was denied his constitutional right to effective assistance of counsel, and (2) the verdict was against the weight of the evidence. Finding no error, we affirm.

*1155 FACTS
¶ 2. The victim testified that her stepfather began molesting her and having "full sexual activity" with her while her mother was at work when she was nine years old. At that time Allen was twenty years old. ML stated that during a period of four years that she and Allen had sexual intercourse over 100 times. She testified that she first began sleeping with her mother and stepfather when she was seven and explained that she never told anyone about the relationship because she was afraid of Allen. She stated that her mother had taken medicine on the night of September 14, 1992, and was passed out when Allen had intercourse with her while they were all in the same bed. She was thirteen years old at that time. Her father and stepmother obtained custody of ML the next day. The following week her father took her to the police department and she gave a full taped statement confirming the allegations against Allen. ML testified at the trial that her relationship with Allen was a sexual one, that Allen told her he was going to marry her when she turned eighteen, and that he was going to get her pregnant when she turned fifteen.
¶ 3. At the trial Allen denied ever having had sexual intercourse with ML and ever having been alone with her during the last three years. He testified that he worked on the night of September 14, 1992, and that he did not come home until 7:30 the next morning when he took ML to school. He also stated that ML was seven years old when he married her mother, that subsequent to the marriage, the mother began medical treatment for major depression and was taking many prescription drugs, and that she was under disability and had not been able to work for the last two or three years.

ISSUES

1. Was Allen denied a fair trial because of ineffective assistance of counsel?

Standard of Review
¶ 4. The test for establishing the adequacy of an attorney's performance is articulated in Strickland v. Washington, 466 U.S. 668, 687-97, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was adopted in this State in Stringer v. State, 454 So.2d 468, 477 (Miss.1984). First, Strickland requires a showing that counsel's performance was deficient; second, the deficiency must be so substantial that the defendant was deprived of a fair trial. Moreover, Allen must demonstrate that but for his counsel's errors, the outcome of his case would have been different. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992). There is a "strong but rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance." Moody v. State, 644 So.2d 451, 456 (Miss. 1994). Attorneys are permitted wide latitude in their choice and employment of defense strategy. Hiter v. State, 660 So.2d 961, 965 (Miss.1995).

Discussion
¶ 5. Allen argues that he was denied effective assistance of counsel and provides a lengthy listing of alleged errors by his retained counsel in an attempt to convince this Court of demonstrative ineffectiveness. After reviewing these alleged errors, it is our conclusion that the majority were purely matters of trial strategy and, therefore, were at his counsel's discretion. We also find many assertions of error to be based on Allen's personal opinion or mere speculation as proof of the prejudice that he supposedly suffered as a result of his attorney's "errors."
¶ 6. First, Allen contends that Dr. Virginia Deroma should have been called on to testify because her testimony was important. The record indicates that trial counsel decided not to call Dr. Deroma because her testimony would have been cumulative and he did not have funds to pay for her time, and also that counsel told the court that he had reached this decision *1156 after discussing it with Allen. Allen does not, however, state what Dr. Deroma would have said on the witness stand had she testified. In the absence of this information, it would be mere speculation to conclude that the outcome of the trial would have been different.
¶ 7. Second, Allen asserts that his counsel failed to preserve the record of voir dire. Since he does not cite any fact from the voir dire that would have aided him in the litigation of his case, it is again speculation to guess what occurred in voir dire that would have led to a different outcome had it been transcribed.
¶ 8. Allen also argues that trial counsel did not object to evidence of a longstanding sexual relationship with the victim. Evidence of prior sexual abuse against the same victim who is the victim in the case being tried is admissible to show the appellant's lustful and lascivious disposition toward the particular victim who is under the age of consent. White v. State, 520 So.2d 497, 500 (Miss.1988) (citing Hicks v. State, 441 So.2d 1359 (Miss. 1983)). Also, evidence of substantially similar acts with the same person are properly admitted in cases of sexual battery involving small children. Hosford v. State, 560 So.2d 163, 165 (Miss.1990). Since this evidence is admissible, an objection would have been a wasted effort. We find that failure to object is within trial counsel's discretion and is permitted given his wide latitude in choice and employment of defense strategy. Hiter, 660 So.2d at 965.
¶ 9. In addition, Allen purports that he was caused harm by the failure of counsel to object to certain hearsay testimony, specifically two statements by Ms. Clark, the Allen's neighbor. First, Ms. Clark stated that someone told her that Allen was supposed to marry ML when she turned eighteen. We find that no harm resulted from the failure to object to this statement in light of the fact that this information was already in evidence. The victim herself had made this statement on direct examination earlier in the trial and added that Allen had told her that he was going to get her pregnant when she turned fifteen. Allen also asserts prejudice from counsel's failure to object to Clark's statement that ML's mother told her that Allen would "slap her around" if she told anyone. Allen fails to show what unfair advantage the prosecution gained by being privy to this testimony. Without having the benefit of this explanation, we cannot comprehend how the ultimate outcome of the trial would have been any different had an objection been made to Clark's statement.
¶ 10. Allen also cites as prejudicial trial counsel's failure to obtain a hearing and ruling on his demand for a speedy trial. The record reflects that Allen was arraigned on August 2, 1993 and was tried August 30, 1993. Section 99-17-1 of the Mississippi Code provides that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. CODE ANN. § 99-17-1 (Rev.1994). There is therefore no violation of the State's statutory requirement. Regarding violation of the constitutional right to a speedy trial, the delay from the date Allen was charged on September 21, 1992, until the date of his trial, August 30, 1993, was eleven months. A delay of eight months is presumptively prejudicial, and this would trigger the speedy trial analysis found in Barker v. Wingo, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). However, the motion for a speedy trial was not made until August 30, 1993, the day of the trial. When the motion was made, the court was quick to respond, "Kind of late to be filing that, isn't it?" It was evident that any ruling on the demand would not have been favorable. The presumption under Strickland is that counsel's conduct fell within the wide range of reasonable professional assistance and that counsel *1157 chose not to pursue a ruling as part of the trial strategy. Allen has not shown that his counsel's failure to obtain a ruling on Allen's speedy trial claim resulted in an unfair trial as required by Strickland.
¶ 11. Allen also complains that counsel failed to object when the prosecutor questioned him regarding his wife's use of a specific medication, Desyrel. The relevant colloquy follows:
Q: Mr. Allen, your wife suffered from depression, correct?
A: Major depression.
Q: She was on what we call Prozac, Zanax, and Desyrel. Are you familiar with those drugs?
A: No, sir, I'm not.
Q: You've never seen her medication?
A: I've never read the labels on them. She always kept them hidden.
Q: Okay.... She of course, had many prescription drugs, correct?
A: Yes, sir.
Q: You don't remember Prozac?
A: No, sir.
Q: You don't remember Zanax?
A: Zanax we had to get refilled one time.
Q: And do you remember Desyrel, the one that put her to sleep?
A: No, sir.
Q: How long had she been on those medications?
A: I don't know. They kept changing them on her. She kept telling them that they didn't work.
Allen fails to show what was objectionable about the question regarding Desyrel and does not demonstrate how this prejudiced his trial so that the outcome would have been different had an objection been made. In light of the fact that evidence had already been admitted from other witnesses regarding the mother's seemingly chronic psychiatric problems and relevant prescription medications, this statement was at most cumulative and therefore caused no prejudice.
¶ 12. We also fail to find merit in Allen's claim that he was denied a fair trial because trial counsel failed to review the jury instructions. The record is clear that counsel looked at the instructions and responded, "They're right out of the textbook, Your Honor. I have no objection to them." Allen makes no claim that the instructions were inaccurate statements of law or how any inaccuracy in the instructions resulted in prejudice to him.
¶ 13. Allen faults his counsel for failure to produce records supporting his alibi, that he was working on the night of the rape. Allen, however, fails to show that such records of employment existed so as to corroborate his alibi. Without seeing the proffers of alibi witness testimony it is impossible to know if the alibi would have been supported. Again, being speculative, this does not rise to the level of proof required to show ineffective assistance of counsel in accordance with Strickland.
¶ 14. We also find no substance to Allen's claim that prejudice resulted from counsel's failure to explore ML's fear that Allen would kill her if she told anyone that he was having intercourse with her. He claims that had this been further probed that it may have established that the fear was unreasonable or a result of the influence of others as opposed to a direct threat from Allen. A review of the record shows that ML had already testified on direct examination in regard to this matter when she was asked why she initially denied to Detective Carvin that Allen had sexually abused her:
A: Because I was still afraid of him and I thought he would kill me.
Q: Did he say he would kill you?
A: I don't know, but he could have hurt me really bad because he had a bad temper, and I was afraid he was going to hurt me.
*1158 We cannot say that the fact that Allen's counsel chose not to pursue this issue resulted in prejudice to Allen, given the fact that attorneys are permitted wide latitude in their choice and employment of defense strategy. Hiter, 660 So.2d at 965.
¶ 15. In addition, Allen asserts that he was denied a fair trial because his trial counsel did not cross-examine Dr. Hersline, the pediatrician who examined the victim. Hersline testified that the victim's vaginal condition was consistent with multiple penile penetration. Counsel had already successfully persuaded the court to exclude testimony by Dr. Hersline that the victim had told her that Allen had raped, molested, or assaulted her. Allen does not suggest what course of cross-examination could have been pursued or how that would have helped him to prove his theory of the case. Had he cross-examined Hersline he would have taken the chance of opening the door to testimony that would have been harmful to his client. We thus fail to find a deficient performance by counsel for failure to cross-examine a physician who gave her factual observations.
¶ 16. Allen also alleges that his counsel failed to file an affidavit pursuant to section 97-3-68 of the Mississippi Code regarding evidence that the victim had engaged in sexual relations with someone other than Allen. The record indicates that his counsel never intended to file such an affidavit, but that opposing counsel noted that if the trial strategy of the defense was to show prior sexual conduct of the victim to impugn someone other than Allen, then section 97-3-68 required the filing of an affidavit stating the offer of proof. The theory of Allen's case was that Allen did not have sexual intercourse with ML and that ML lied when she said that he did. In support of this, counsel sought to discredit the victim by bringing out prior inconsistent statements that she had made. The filing of an affidavit was not required in order to accomplish this and we find that there was therefore no prejudice as a result of not having done so.
¶ 17. Allen asserts that his counsel should have requested a continuance to allow for more time to prepare for his defense. Assertions of error cannot be based on lack of time to prepare. United States v. Cronic, 466 U.S. 648, 660, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Allen makes no showing that additional time to prepare would have improved the performance of his counsel, nor does he show that the outcome of the trial would have been different given more time for preparation. Accordingly, we detect no resulting prejudice.
¶ 18. After examining each allegation we conclude that none is supportive of Allen's claim of ineffective assistance of counsel.

2. Was the verdict against the overwhelming weight of the evidence?

Standard of Review
¶ 19. Allen claims that the verdict is contrary to the overwhelming weight of the evidence. The weight of the evidence is tested in a light most favorable to the State, with all credible evidence consistent with guilt accepted as true and every favorable inference given to the prosecution; reversal may be had only where reasonable and fair-minded jurors could only find the accused not guilty. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). In determining whether a jury verdict is against the overwhelming weight of the evidence the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will it be disturbed on appeal. Benson v. State, 551 So.2d 188, 193 (Miss.1989) (citing *1159 McFee v. State, 511 So.2d 130, 133-34 (Miss.1987)). It has been said that on a motion for new trial the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. United States v. Sinclair, 438 F.2d 50, 51 n. 1 (5th Cir.1971). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Mitchell v. State, 572 So.2d 865, 867 (Miss.1990).
¶ 20. The crime of capital rape with which Allen was charged is proscribed by the Mississippi Code which provides:
Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a child under the age of fourteen (14) years, upon conviction, shall be sentenced to death or imprisonment for life in the State Penitentiary....
Miss.Code Ann. § 97-3-65(1) (Rev.1994). The evidence adduced at trial demonstrates that the elements of the crime of rape were established.
¶ 21. The essence of Allen's guilt or innocence of the crime hinges on whether the jury found Allen or ML to be the more credible witness. If the jury believed Allen, then it would have believed that ML fabricated her story and Allen would be guilty of nothing. Since the jury believed ML's testimony, which she sought to corroborate primarily by the testimony of the State's witnesses, but which seems to have been bolstered through the testimony of witnesses for the defense as well, the jury found Allen guilty.
¶ 22. A review of the evidence shows that the victim identified Allen in the courtroom and testified that on the night of September 14, 1992, that her stepfather, Charles David Allen, came into the bedroom and "he pulled my panties down and put his penis inside my vagina, and he started molesting me." She said her mother was asleep in the same bed and that Allen had his front to her back and ejaculated on the bed so that she would not get pregnant. The pediatrician who examined ML testified that the findings of the physical examination were "consistent with repeated penile penetration over a period of multiple times." The pediatrician stated that the history she obtained from ML indicated that only one individual was involved.
¶ 23. The appellant argues that the victim's testimony was contradictory; that when she first interviewed with Detective Carvin on September 12, 1992; and that she told him that it was her father and grandfather who were the perpetrators of the sexual abuse. She testified that when she talked to Detective Carvin two days prior to the incident that she denied ever having been sexually abused by Allen because she was afraid of him because he had a bad temper. She said that she told Carvin that her father and grandfather had abused her because Allen told her to blame it on someone in the family so that he would not get into trouble.
¶ 24. Carvin testified that when he interviewed the mother on that same day that she confirmed the allegations and was "embarrassed basically because certain things she told me, it was obvious what was going on, and she just failed to realize that at the time." Carvin testified that Allen denied the allegations that day and that Allen first denied that ML slept between him and his wife but that he later stated that she did in fact sleep in between them. According to Carvin, ML was taken into protective custody on September 12 and was released back to her stepfather and mother on September 14, the day that the rape occurred. The father obtained custody and on September 21, 1992, called Carvin stating that ML was willing to come to the police department and tell the full truth. Carvin said that the father *1160 brought her on that day with a representative from the Department of Human Services. Carvin taped a statement from ML at that time confirming the allegations. Carvin stated that she was "very upset and more or less ashamed, embarrassed." Carvin signed a sworn affidavit against Allen and Allen was arrested.
¶ 25. The first witness for the defense was Ms. Ritter, a neighbor of the Allens. She testified that during the three months prior to the incident that she had talked with ML and that she denied that there was any sexual abuse at all. Ritter said that the subject had come up about once a week during that time. On cross-examination Ritter admitted that the reason that the subject came up was that she suspected that there was a relationship between the stepfather and ML that was pretty close to being boyfriend and girlfriend but that she did not think that it was a sexual one. Ritter said that the mother had a lot of psychological problems and that she would come to Ritter's house during all hours of the night in tears wanting to talk to her. Ritter testified that it was correct that the mother and stepfather "were arguing more than they were talking."
¶ 26. The next witness for the defense was another neighbor, Ms. Clark. She testified that she had discussed the subject with ML and that ML and her mother argued because of the mother's steady accusations in regard to the relationship between the daughter and stepfather. Clark also testified that she asked ML "if this was really going on," that the subject came up about four times and that ML "was steady saying that there was nothing going on." Clark stated that she had discussed the subject with the mother and that the mother "would come over often and she would be upset about David [Allen] and ML." The mother told Clark that no one would listen to her and that people would think she was crazy if she said anything. Clark testified that she had walked in on Allen and ML and found them "laying on the couch in a blanket" and that she thought it was inappropriate for a stepfather and daughter.
¶ 27. At the trial Allen denied ever having had sexual intercourse with ML and ever having been alone with her during the last three years. He testified that he worked on the night of September 14, 1992, and that he did not come home until 7:30 the next morning when he took ML to school.
¶ 28. The Mississippi Supreme Court has held repeatedly that the credibility of a witness is a matter for the jury. Anderson v. State, 461 So.2d 716, 719 (Miss.1984); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983); Billiot v. State, 454 So.2d 445, 463 (Miss.1984). It is not our function to determine whose testimony to believe. Thomas v. State, 495 So.2d 481, 485-86 (Miss.1986); Anderson v. State, 461 So.2d at 719; and Groseclose v. State, 440 So.2d at 300. Finally, the jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict. Billiot v. State, 454 So.2d at 463; Thomas v. State, 495 So.2d at 485-86.
¶ 29. An evaluation of the evidence shows that it was ample to support the jury's conclusion that Allen was guilty of the offense charged. This Court is compelled to the conclusion that the State's evidence, when viewed in the light most favorable to the State, supports the jury's verdict.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
*1161 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, MOORE, AND PAYNE, JJ., CONCUR.
THOMAS, J., NOT PARTICIPATING.