350 So.2d 1384 (1977)
Eddie E. WATKINS
v.
STATE of Mississippi.
No. 50122.
Supreme Court of Mississippi.
November 2, 1977.
*1385 Ray S. Mikell, Kosciusko, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
PATTERSON, Chief Justice, for the Court:
Eddie E. Watkins was convicted in the Circuit Court of Attala County of aggravated assault upon a law enforcement officer. He appeals from this conviction and sentence of fifteen years in the state penitentiary, contending that he was illegally arrested and therefore privileged to resist the arrest or, alternatively, the events subsequent to the illegal arrest were erroneously admitted into evidence.
On February 20, 1975, at about 1:30 in the morning, Officer Mitchell of the Kosciusko Police Department observed a car leaving Campbell's Motel & Restaurant. He followed it for a short distance and, after radioing Officer Steed for assistance, stopped the car on Highway 35 South.
Mitchell testified he had seen the car at about 10:00 p.m. driven by Ricky Tavares who he knew had been recently released from Parchman and two nights before that he had observed the car with a Hinds County license tag and had checked its registration. He also stated, when asked if the car was driven properly, "Well, it was very slow, or, he was weaving. I guess anybody does if they are driving slow."
Upon stopping the car, Mitchell approached the driver's side and Officer Steed, who had arrived in another patrol car, approached the passenger side. Mitchell directed the beam of his flashlight into the car and observed a nearly empty wine bottle. He then asked Tavares for his driver's license and, smelling alcohol on his breath, searched him and directed him to his patrol car.
Meanwhile Officer Steed directed his attention to Watkins, a passenger in the car, and observed him cramming some green leafy substance into his mouth. According to Steed, Watkins smelled of alcohol, his eyes were glazed and he stumbled upon getting out of the car. Steed arrested Watkins for public drunkenness and placed him in the back of his patrol car.
While enroute to jail Watkins in some manner obtained the shotgun mounted in the gun rack of the patrol car and pointed it to Officer Steed's head and commanded him to pull over to the side of the road. After Steed had done so, Watkins pulled the trigger while pointing the gun at the officer. Thankfully, there was not a shell in the gun's chamber and it did not fire. Steed was then able to take the gun from Watkins and proceed to jail with him.
Watkins admitted he pointed the gun at the officer's neck and pulled the trigger. He denied drinking or having a green leafy substance in his mouth. A test for drunkenness by alcoholic content at the police station proved negative.
At the outset we are of the opinion the initial arrest was without probable cause. Officer Mitchell admitted he stopped the car "just mainly to check out the driver to see who he was and check his license." While there is evidence which might be tenuously argued to demonstrate probable cause for arrest, the overwhelming weight of the evidence clearly presents the motivation for arrest as being mere desire to "check out" the occupants of the car. Such an arrest violates the Fourth Amendment protection. Keys v. State, 283 So.2d 919 (Miss. 1973).
*1386 Since there was not probable cause for the initial arrest of Tavares, the issues remaining are:
(1) If a motorist is stopped without probable cause by one officer and another officer, who has been summoned to his aid, places a passenger in the automobile under arrest, is the passenger privileged to resist by seizing a gun, pointing it at the officer, and pulling the trigger?
(2) Does the Fourth Amendment exclusionary rule bar evidence of an assault on a police officer when the preceding arrest was without probable cause?
(3) Is an indictment and conviction for aggravated assault upon a law officer defective because it states the assault was "within the scope of duty" but the evidence discloses the arrest was without probable cause?

THE PRIVILEGE OF RESISTING AN ILLEGAL ARREST
There are several cases of this Court which hold that a person unlawfully arrested may legally resist. Jolliff v. State, 215 So.2d 234 (Miss. 1968); Smith v. State, 208 So.2d 746 (Miss. 1968); King v. State, 246 Miss. 86, 149 So.2d 482 (1963); Pettis v. State, 209 Miss. 726, 48 So.2d 355 (1950); Hinton v. Sims, 171 Miss. 741, 158 So. 141 (1934); Deaton v. State, 137 Miss. 164, 102 So. 175 (1924); and Merritt v. State, 5 So. 386 (Miss. 1889).
The broadest pronouncement of the right to resist occurs in King, supra, an obstruction of justice case. In dictum the Court, citing 4 Am.Jur., Arrests, section 92, page 63 (1936), stated:
"The right of personal liberty is one of the fundamental rights guaranteed to every citizen, and any unlawful interference with it may be resisted. Every person has a right to resist an unlawful arrest; and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary." (149 So.2d at 484)
An analysis of King reveals that its holding is not as broad as the dictum suggests. In it two officers, without warrant or probable cause, pursued a car which pulled into a private driveway. The driver fled into or upon the premises of a private home. As the officers arrived on the private property the owner asked why they were trespassing and demanded they leave, thus essentially barring the pursuit but without using physical violence. The Court held that where a citizen, without violence, confronts peace officers who had neither a warrant nor probable cause to arrest and bars them from his premises, there was not a prima facie case of obstructing justice and the conviction was reversed.
Cases subsequent to King have carefully restricted the privilege of resistance to this limitation rather than broadening it by indulging its dictum. Smith v. State, 208 So.2d 746 (Miss. 1968), involved invasion of private premises and an unarmed physical resistance by the owner when the officers stated they had a warrant but would not produce it when demanded by the arrestee. Similarly, Jolliff v. State, 215 So.2d 234 (Miss. 1968), involved the invasion of private business premises where officers stated they had no warrant and the resistance was limited to unarmed nonviolent resistance.
In considering these cases, the Court has adhered to a limited right to resist arrest. In determining the scope of the privilege it has identified several variables which it measured:
(1) The nature and location of the premises where the attempted arrest occurred;
(2) Inquiry as to whether the arrest was made with apparent legal authority as opposed to no claim of authority;
(3) The potential for violence and physical harm under the circumstances of the particular confrontation;
(4) Whether the force used in resistance was reasonable considering the above factors.
Applying these standards to the present case it is apparent that the limited privilege of resisting arrest does not lend itself in support of Watkins' violent resistance which fortunately did not terminate in *1387 homicide. The arrest was made upon a public highway by an officer, summoned by another officer, both of whose identities as officers with apparent legal authority were unquestioned because they were in full uniform and clearly marked patrol cars. Compare Craft v. State, 202 Miss. 43, 30 So.2d 414 (1947); and Hinton v. Sims, 171 Miss. 741, 158 So. 141 (1934). Moreover, Officer Steed, summoned to the scene, was confronted with a passenger in an automobile at 1:30 a.m. who he believed was intoxicated because of the wine bottle, glazed eyes and the stumbling upon getting out of the car. Officer Steed's arrest of Watkins, unaccompanied by either vocal or physical abuse, was not unreasonable under these circumstances, in our opinion. To the contrary, Watkins' resistance included the intended death of Steed and was accompanied by overt but unfruitful acts to that result. There is no judicial way that Watkins' resistance can be classified as privileged or condoned by a court in modern society. Conceding the appellant's right of freedom, liberty and privilege against unauthorized restraint, his greatest discomfiture would have been the possible embarrassment of arrest and detention for the remainder of the night. Moreover, there would have been available to him the legal processes of the courts for vindicating his illegal arrest if indeed it was such. We conclude the first assignment of error is without merit.

THE EXCLUSIONARY RULE
Watkins contends that because the initial arrest was illegal, all subsequent evidence of the assault should be excluded. He apparently relied upon Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It is argued "but for" the illegal arrest, the assault would not have occurred and so evidence of it should be excluded as it derived from a primary illegality.
The Court in Wong Sun made clear that the question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or by means sufficiently distinguishable to be purged of the primary taint." (371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455). Other courts have attacked what they considered the illogic of mechanically excluding all evidence which would not have surfaced "but for" the primary illegality. A more practical inquiry of considering the precise role the illegal arrest bore to the subsequently discovered evidence was suggested in United States v. Friedland, 441 F.2d 855 (2d Cir.1971).
We are unable to characterize the evidence of assault in this case as either a "discovery" or the result of "exploitation" of the illegal arrest. The evidence sought to be excluded was not provoked by harassment of the defendant while in the custody of the officer. Neither was it the likely product of a continued but nevertheless illegal arrest. Thus, the exploitation element of the exclusion is lacking.
In our opinion the deterring purpose of the exclusionary rule would not be served by excluding evidence of the assault. Moreover, in our judgment it would be unreasonable to approve a crime of violence under the name of lawful resistance. We think the better and safer method of determining the difficult question of probable cause or illegal arrest is to leave that decision to a judicial officer in proper environment rather than to an individual upset by his arrest. We conclude the testimony concerning the assault was properly admitted in evidence.

THE INDICTMENT
The indictment alleged the aggravated assault occurred while the police officer was "within the scope of his duty." Watkins contends the officer could not have been within the scope of his duty because there was no probable cause for the arrest although the allegations are in compliance with Mississippi Code Annotated section 97-3-7 (Supp. 1977).
At the time of the assault Steed was on duty in uniform and in an official patrol car. There is no contention by Watkins that he failed to recognize him as a law enforcement officer or as being on duty as *1388 was the case in Craft v. State, 202 Miss. 43, 30 So.2d 414 (1947); and Hinton v. Sims, 171 Miss. 741, 158 So. 141 (1934). Conceding the initial arrest was without probable cause, we are unable to say that Steed was acting beyond the scope of his duty in answering the call to the scene and arresting Watkins who he reasonably believed was intoxicated. We conclude the appellant was convicted under a proper indictment.
We have considered the other assignment of error relating to continuing the cause for trial at a later date and find it to be without merit.
AFFIRMED.
INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.