I.
This aggravated assault appeal turns largely on whether the accused was of right entitled to have the jury consider whether he might be guilty of the lesser *Page 797 
included offense of simple assault. On the evidence the injuries sustained by the assault victim may not reasonably be characterized as less than "serious bodily injuries". Moreover, the havoc wrought by the defendant was such that it may not be seriously thought that he acted with less than "extreme indifference to the value of human life". We affirm.
 II. A.
On Saturday night, May 8, 1983, around 10:00 David Harbin, the Defendant below and Appellant here, was at the Zodiac Club in Greenville, Mississippi. David, age 22 at the time, called his girlfriend, Linda Faye Overstreet, who was at home watching TV. Linda was 17 and had been David's girlfriend for about two years. Although the two were not married, Linda had a child by David.
After the phone call Linda and a friend of hers, Audrea Adams went to the Zodiac. David and Linda began arguing and the three went outside. David was ready to go and wanted Linda to go with him but she refused. He began pulling her and hitting her behind her head "as hard as he could". In response to this Linda turned around and bit him in the chest. He in turn threw her on the ground, sat on her, and told her he was going to kill her. He got up and Linda began running away. David found a brick, ran after Linda, butted her with his head in her side and then hit her "as hard as he could" with the brick. Linda found herself on the ground with David hitting her in the back of the head with the brick, she could not remember how many times. People from the Zodiac separated the two and took her back into the club.
The police came and Linda was taken to the hospital and treated for cuts and bruises on the back of her head. She had to have stitches in two different places but returned home that night. On Sunday and again on Monday, Linda returned to the hospital, at which time x-rays were taken, her mother was informed that she was bleeding on the inside and that she would have to have surgery. According to Linda the surgery was for "a busted liver". She was in the hospital for eighteen days and her hospital bills were somewhere in the vicinity of $13,000.00 or $14,000.00.
Linda's testimony concerning the incident was substantiated by the testimony of her friend, Audrea Adams, who witnessed the fight outside the Zodiac Club. Audrea testified that, "He was hollering, `I want to find me a bottle so I can kill her.'" Audrea testified that David hit Linda "about seven times". Audrea and the manager of the Zodiac Club managed to get Linda away from David and back into the club until the police could come. Audrea testified that while she and Linda were in the bathroom, "He was coming in there trying to get her again." Audrea testified that the only weapon present during the fight was the brick used by David.
In the voluntary statement that he gave the police David Harbin stated that after Linda bit him on the chest, "I threw her down on the railroad tracks and that is when I think she hurt her side. I hit her in the face with my hand and I did pick up a brick but I don't remember hitting her with the brick. I remember when I threw her on the tracks, she picked up a broken bottle and cut me on my right hand." Captain Wynn, of the Greenville Police Department, testified that he interviewed David in his office in connection with the incident. This interview took place on May 11, 1983. Captain Wynn testified that "he said that she cut him on his hand and I looked at both of his hands and I could see a small cut on his right little finger."
David Harbin's version of the facts was that the serious injury that Linda sustained was probably a result of their falling together on the railroad tracks. He said that he at no time hit her in the stomach or in the side. He did not remember hitting her with the brick and said that she possibly hurt her head when she fell on the railroad track. The uncontradicted facts of her injury and the nature and course of medical care required, however, suggest otherwise. *Page 798 
Harbin was formally charged with aggravated assault upon Linda Faye Overstreet in violation of Miss. Code Ann. § 97-3-7(2)(a) in an indictment returned by the Washington County Grand Jury on October 14, 1983.
On April 26, 1984, the case was called for trial, at the conclusion of which the jury found that Harbin was guilty as charged in the indictment.
Thereafter on May 2, 1984, Harbin was sentenced to serve a term of ten (10) years in the custody of the Mississippi Department of Corrections. Harbin filed a motion for judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, for a new trial which was overruled on May 21, 1984. From this conviction and sentence, Harbin appeals.
 III.
Harbin's first assignment of error concerns the indictment under which he was prosecuted. He argues here that the indictment charged no more than simple assault, Miss. Code Ann. § 97-3-7(1) (Supp. 1984) and, accordingly, that the trial judge erred in allowing the jury to consider a charge greater than simple assault. More specifically, the trial judge erred, we are told, when he submitted the case to the jury on the State's theory of aggravated assault. Miss. Code Ann. § 97-3-7(2) (Supp. 1984).
Our inspection of the indictment reflects that it is headed by a typed label reading "AGGRAVATED ASSAULT 97-3-7(2)(a)". This is followed by language charging that Harbin
 on or about the 8th day of May, . . . 1983, in the County [Washington] aforesaid, . . ., unlawfully, willfully, feloniously, purposely, knowingly and intentionally did assault the person of Linda Faye Overstreet, causing serious bodily injury to Linda Faye Overstreet, by beating Linda Faye Overstreet with a brick with a force and in a manner likely to cause serious bodily injury, against the peace and dignity of the State of Mississippi.
Harbin charges that this indictment falls short of effecting a viable charge under Section 97-3-7(2), the aggravated assault statute, which reads as follows:
 A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposefully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; . . . . [Emphasis supplied]
Harbin's specific objection is that the indictment fails to include the language "under circumstances manifesting extreme indifference to the value of human life".
Whatever may have been the law in former days, our starting point today for consideration of a question such as this is Rule 2.05, Uniform Criminal Rules of Circuit Court Practice. That rule provides that an indictment is legally adequate where it contains:
 a plain, concise and definite written statement of the essential facts constituting the offense charged and . . . fully . . . notif[ies] the defendant of the nature and cause of the accusation against him.
Our inquiry in a nutshell is whether the indictment afforded Harbin and his attorney notice in fact that he was being prosecuted for aggravated assault. Two points are dispositive. First, the indictment charges that Harbin caused "serious bodily injury" and that he beat his victim in a manner likely to cause "serious bodily injury". The phrase "serious bodily injury" is found in the aggravated assault statute, § 97-3-7(2)(a). The simple assault statute contemplates prosecutions of those who cause mere "bodily injury", as distinguished from "serious bodily injury". Second, the indictment is labeled at the top "AGGRAVATED ASSAULT". Aggravated assault has an easily ascertainable statutory definition and should give Harbin reasonable notice of what he is charged with even without the code section number.Jones v. State, 461 So.2d 686, 692-94 (Miss. 1984). The label in this case goes further and includes the correct section number *Page 799 
"97-3-7(2)(a)". See Hines v. State, 472 So.2d 386, 390 (Miss. 1985).
 [2, 3] Rule 2.05 expressly provides that Formal or technical words are not necessary in an indictment, if the offense can be substantially described without them.
The rule pretermits any requirement that the indictment include the exact or formal wording of the statute under which the accused is charged. Certainly, the indictment need not (though it may) charge in the exact language of the statute said to have been offended. If from a reading of the indictment as a whole the accused is in fact given fair notice of that with which he has been charged, the indictment is legally sufficient. Applying the above rules of law to the facts, in this instance the form and content of the indictment, there can be no serious question but that the indictment is legally sufficient. Hines v. State,472 So.2d 386, 390 (Miss. 1985); Harden v. State, 465 So.2d 321, 324 (Miss. 1985); Henderson v. State, 445 So.2d 1364, 1367-68 (Miss. 1984). The assignment of error is denied.
 IV.
Assuming arguendo that he was not entitled to have the jury consider the case against him exclusively as one charging simple assault, Harbin argues that he was at least entitled to have the jury consider that issue among others. Put otherwise, Harbin claims here that the trial judge erred when he refused to instruct the jury regarding the lesser-included offense of simple assault.
We have recently articulated the test for determining whether a lesser-included offense instruction should be granted in a criminal prosecution. In Fairchild v. State, 459 So.2d 793
(Miss. 1984), we stated:
 Only if this Court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the State, that no hypothetical, reasonable jury could convict . . . the defendant of [the lesser-included offense], can it be said that the refusal of the lesser-included offense instruction was proper.
459 So.2d at 801; Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985). See also Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984).
When we apply these rules to the case at bar, we find the assignment of error without merit, for in a very real sense, this case presents the other side of the coin we considered inFairchild and Lee and Ruffin.
To begin with, Harbin concedes that the evidence was sufficient to sustain his conviction on the crime of aggravated assault.See Lee v. State, 469 So.2d 1225, 1229-30 (Miss. 1985); Cookv. State, 467 So.2d 203, 208-09 (Miss. 1985); May v. State,460 So.2d 778, 781 (Miss. 1984). We have held repeatedly, however, that the fact that the evidence is sufficient to support a verdict of guilty of a lesser included offense does not necessarily preclude our reversal for failure to grant the lesser-included instruction or even inform our decision on that point. The test is whether there was evidence in the record so that a reasonable juror could have concluded that the accused was guilty of simple assault, as that offense has been defined in Miss. Code Ann. § 97-3-7(1).
We emphasize one feature of the rule stated in Fairchild. The lesser-included offense instruction must be granted where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt. This rule does not require that it be established to an absolute certainty that the accused could not be guilty of the lesser-included offense. Where, as here, uncontradicted physical facts so overwhelmingly support a finding of aggravated assault and render so unreasonable the suggestion that the accused may have been guilty only of simple assault, reversal is not required.
Without doubt the "I don't remember" and "she probably fell on the rail" version told by Harbin muddies the water and approaches *Page 800 
the situation under which Lee held the lesser included offense instruction required. If we correctly appreciate Harbin's version of the facts, however, he is suggesting that Linda's injuries were caused accidentally, not that he caused them in a simple, as distinguished from an accidental, assault.
Harbin's theory would be a reasonable possibility of how the incident occurred if all the State had produced was the narrative of Linda and her friend, Audrea Adams. In such a state of the record, Fairchild and Lee would control and the defendant would be entitled to an instruction on the lesser included offense of simple assault. Conversely, a different result would obtain where the uncontradicted physical facts overwhelmingly support the greater charge to the extent that no reasonable juror could have found him guilty only of simple assault.
The clincher here is the uncontradicted evidence regarding the nature and extent of Linda's injuries. She was severely wounded. She was hospitalized for eighteen days and ran up medical bills in the vicinity of $13,000.00. Beyond a reasonable doubt, such injuries are "serious bodily injuries" within Section97-3-7(2)(a). Beyond a reasonable doubt, such injuries were inflicted "under circumstances manifesting extreme indifference to the value of human life".
AFFIRMED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.