502 So.2d 639 (1987)
Virginia GUILBEAU
v.
STATE of Mississippi.
No. 56933.
Supreme Court of Mississippi.
January 28, 1987.
Rehearing Denied March 4, 1987.
*640 James K. Dukes, Hattiesburg, William F. Dukes, Dukes, Dukes & Keating, Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and PRATHER and ANDERSON, JJ.
PRATHER, Justice, for the Court:
Virginia Guilbeau was convicted in the Circuit Court of Hancock County of possession of a controlled substance with intent to distribute. From a sentence of 20 years in prison, with 5 years suspended, and a fine of $150,000, Mrs. Guilbeau appeals. This Court affirms.

I.
A "sting" operation began in McAllen, Texas where Gregory Ladner, son of the appellant, and Junco Ivan Martinez allegedly hired James Beaupre, an undercover agent with the Drug Enforcement Administration (DEA) to receive and store a large quantity of Columbian marijuana. Dennis Bryant, another DEA undercover agent agreed to haul the marijuana to Mississippi in a Ryder rental truck. Martinez gave Beaupre a telephone number for Bryant to call upon arriving in Mississippi. The telephone number was listed in the Hancock County, Mississippi telephone directory adjacent to the name of the appellant, Virginia Guilbeau.
On March 24, 1984, Agent Bryant drove the rental truck full of marijuana to Slidell, Louisiana, where he telephoned the number given to him by Agent Beaupre. Agent Bryant talked to a Spanish-speaking man named Raul and informed Raul that he would arrive at a hospitality center and rest area on Interstate 10 at approximately 9:30 a.m.
Agent Bryant arrived at the rest area in Hancock County at approximately 9:40 a.m. Agent Bryant was driving alone, but following closely behind in a pickup truck was undercover DEA Agent Michelle Ashley. In addition, DEA Agent William Dodge was staked out at the rest area in a Winnebago surveillance vehicle.
After parking the Ryder truck, Agent Bryant got out and began a conversation with Agent Ashley. Shortly, appellant approached the truck, circled behind, and eventually approached Agent Bryant and asked if he was the driver. Mrs. Guilbeau was carrying a piece of paper containing the description and tag number of the rental truck. Mrs. Guilbeau asked Agent Bryant if the truck was locked, to which Agent Bryant responded that the key to the back end of the truck was on the key ring with the ignition key. Agent Bryant then admonished Mrs. Guilbeau to be careful because the truck contained a large load. Mrs. Guilbeau responded, "Yes, I know. Don't worry about it, I have other people in the area and we're going to be taking it along with us."
Agent Bryant turned the keys over to Mrs. Guilbeau and departed with Agent Ashley. Agent Dodge continued his surveillance. Subsequently, the rental truck, driven by a Latin male, exited the rest stop onto Interstate 10 following a white Lincoln automobile driven by Mrs. Guilbeau, and occupied by her son, Gregory Ladner.
The two vehicles eventually turned off I-10 onto Hwy. 603 and eventually found their way to Mrs. Guilbeau's farm on Fire Tower Road.
Agent Audis Jerome Wells was staked out near the Guilbeau farm and observed the Ryder truck parked behind a barn. As Agent Wells drove away from the Guilbeau farm, he was stopped and confronted by Virginia Guilbeau, who had switched to a *641 red automobile. After informing Agent Wells he had no business in her neighborhood, Mrs. Guilbeau traveled to a local sheriff's sub-station where she discovered the DEA's Winnebago surveillance vehicle. Mrs. Guilbeau looked inside the vehicle, pulled on the doors, but the vehicle was locked.
Shortly thereafter, Mrs. Guilbeau was arrested along with her son Gregory Ladner, Junco Ivan Martinez, and Raul Rajas Lazardo. The four were charged with possession and intent to distribute 5,100 pounds of marijuana in violation of Miss. Code Ann. § 41-29-139 (Supp. 1986).
Mrs. Guilbeau was tried alone and was found guilty. She was sentenced to a term of twenty years, five years suspended, in the custody of the Mississippi Department of Corrections. Additionally, Mrs. Guilbeau was ordered to pay a fine of $150,000.

II.
Was the defendant entitled to a directed verdict or a new trial?
Under this assignment of error, the appellant contends:
(1) The State failed to prove she possessed the marijuana;
(2) The State failed to prove she knew there was marijuana in the rental truck; and
(3) The State failed to prove she intended to distribute or transfer the marijuana.
Central to appellant's argument is the fact that this case was a circumstantial evidence case. "Circumstantial evidence is entitled to the same weight and effect as direct evidence and this Court has upheld convictions based solely on circumstantial evidence."[1]Cardwell v. State, 461 So.2d 754, 760 (Miss. 1984). However, where the evidence of guilt is largely circumstantial, the State is required to prove the accused's guilt not only beyond a reasonable doubt, but to the exclusion of every other reasonable hypothesis consistent with innocence. Fisher v. State, 481 So.2d 203, 212 (Miss. 1985); Keys v. State, 478 So.2d 266, 267 (Miss. 1985).
Also important is the posture of appellant's argument. She contends she was entitled to either a directed verdict or a new trial. The standard under which this Court reviews the denial of a motion for directed verdict was stated in Bayse v. State, 420 So.2d 1050, 1054 (Miss. 1982) as follows:
In passing upon a motion for a directed verdict, all evidence introduced by the state is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and, if there is sufficient evidence to support a verdict of guilty, the motion for a directed verdict must be overruled.
Similarly, a new trial will not be ordered unless the Court is "convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).

Knowledge and Possession
This Court reiterated in Pool v. State, 483 So.2d 331, 336 (Miss. 1986) the standard announced in Curry v. State, 249 So.2d 414, 416 (Miss. 1971) for determining questions of possession. In Pool and Curry the Court said:
[T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
*642 The Court in Pool further defined constructive possession by quoting Hamburg v. State, 248 So.2d 430, 432 (Miss. 1971):
"[O]ne who is the owner in possession of the premises... is presumed to be in constructive possession of the articles found in or on the property possessed." Id. at 432. This presumption is rebuttable, however, and does not relieve the State of its burden to prove guilt beyond a reasonable doubt. Id. Thus, "[w]here the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband." Powell v. State, 355 So.2d 1378, 1379 (Miss. 1978). See also Keys v. State, 478 So.2d 266, 268 (Miss. 1985).
Pool v. State, 483 So.2d at 336.
The appellant was the owner of the farm and all outbuildings situated on the curtilage thereof on which the truckload of marijuana was found. That fact is sufficient to raise the presumption she constructively possessed the marijuana.
Also, the appellant exercised dominion and control over, and was in the proximity of, the marijuana when she took delivery of the keys to the rental truck from Agent Bryant. Other incriminating factors suggesting appellant had knowledge of possession of the marijuana were: (1) the telephone number given to Agent Bryant to contact was listed under appellant's name; (2) the appellant drove Gregory Ladner and Raul Lazardo to the hospitality center to pick up the marijuana; (3) when appellant took possession of the keys to the rental truck she was holding a piece of paper with the description and tag number of the truck written on it; (4) the rental truck followed appellant's white Lincoln automobile back to appellant's farm; (5) appellant confronted and admonished undercover Agent Wells; and (6) appellant was seen investigating the DEA surveillance vehicle.
Accepting the State's evidence, along with the reasonable inferences drawn therefrom, the trial judge committed no error in overruling appellant's motion for directed verdict or in denying appellant a new trial.

Intent to Distribute or Transfer
Mississippi case law indicates that both the quantity of the contraband seized, as well as the nature of the contraband, will be determinative of whether the accused possessed the contraband with the intent to distribute. Coyne v. State, 484 So.2d 1018, 1021 (Miss. 1986). See also, Bryant v. State, 427 So.2d 131 (Miss. 1983) and Breckenridge v. State, 472 So.2d 373 (Miss. 1985).
In the instant case, law enforcement officers seized 118 bales of marijuana weighing approximately 5,100 pounds. Considering this large amount in the light most favorable to the State, with all reasonable inferences that may be drawn therefrom, the trial judge committed no error in overruling appellant's motion for a directed verdict in the issue of intent to distribute. Similarly, the trial judge was correct in overruling appellant's motion for a new trial.
In addition, this Court holds the jury verdict in the present case was not against the overwhelming weight of the evidence on the issues of knowledge, possession, or intent to distribute.

II.
Should the trial court have granted jury instructions D-1, D-4, D-5, D-7, or D-10?
The trial judge wisely avoided error by submitting this case to the jury as a circumstantial evidence case. In her brief, appellant cites Henderson v. State, 453 So.2d 708 (Miss. 1984) to support her argument that the trial court committed reversible error by not giving certain jury instructions.
In Henderson, a defendant was convicted, with evidence entirely circumstantial, of possession of cocaine. The trial court refused *643 the defendant's circumstantial evidence instructions. Reversing the conviction, this Court held:
Where all the evidence tending to prove the guilt of the defendant is circumstantial, the trial court must grant a jury instruction that every reasonable hypothesis other than that of guilt must be excluded in order to convict. [Citations omitted] Also where the evidence is purely circumstantial, the trial court must grant a "two-theory" instruction such as D-6. Johnson v. State, 347 So.2d 358, 360 (Miss. 1977); Nester v. State, 254 Miss. 25, 29, 179 So.2d 565, 566 (1965).
Henderson v. State, 453 So.2d at 710.
The appellant in the instant case also relies on Harper v. State, 478 So.2d 1017 (Miss. 1985). In Harper, a defendant who was convicted of burglary of an inhabited dwelling testified he entered the house with no intent to commit a crime, only the intent to see his young daughter before she was taken to live in Texas. Based on that testimony, the defendant submitted a jury instruction on the lesser included offense of trespass. The trespass instruction was refused.
On appeal, this Court reversed, holding the defendant was entitled to the burglary instruction. The Court also clarified the guidelines for trial judges to follow when refusing jury instructions.
[W]here under the evidence a party is entitled to have the jury instructed regarding a particular issue and where that party requests an instruction which for whatever reason is inadequate in form or content, the trial judge has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new, corrected instruction. Where the trial judge fails in this duty and where the proffered instruction relates to a central issue in the case which is not covered by any other instruction given to the jury, we will reverse.
Harper v. State, 478 So.2d at 1018.

Instructions D-4, D-5, and D-7
Jury instructions D-4, D-5, and D-7 dealt with constructive possession. All three instructions were denied by the trial judge with no indication of what deficiencies the trial judge saw in them.
Appellant contends the trial judge committed reversible error by not advising counsel of the deficiencies of the instructions, as required by Harper, and by not giving one of the instructions as a "two-theory" instruction as required by Henderson.
A close reading of Harper indicates this Court will reverse when the trial court fails in its responsibility to reform or to advise counsel "where the proffered instruction relates to a central issue in the case which is not covered by any other instruction given to the jury. ..." Harper, 478 So.2d at 1018 (Emphasis added).
Because constructive possession was adequately covered in jury instructions D-3 and D-9, this Court holds there was no reversible error under Harper in refusing instructions D-4, D-5, and D-7, and in refusing to reform the instructions or informing defense counsel of the deficiencies in the instructions.
In addition, this Court holds the trial court committed no reversible error under Henderson, because instructions D-4, D-5 and D-7 were not "two-theory" instructions.

Instruction D-10
Appellant attempts to invoke the doctrines of both Harper and Henderson by contending, "Appellant's instruction D-10, which was refused by the Court, with little or no effort to correct or advise counsel as to its deficiencies, if any, was, even if inartfully drawn, an effort at presenting a `two-theory' instruction."
Appellant's Harper argument, that the trial judge made no effort to advise counsel of the deficiency of D-10, has no merit. In *644 fact, the trial judge used two pages of the trial record trying to rehabilitate D-10.
As for appellants "two-theory" argument, instruction D-10 would have required acquittal if the jury found that the appellant "did not know that [the possessed marijuana] was in fact, a controlled substance... ." That theory is a misstatement of the law. "It is fundamental that all persons are presumed to know the law...." McNeely v. State, 277 So.2d 435, 437 (Miss. 1973).
There was no error in refusing instruction D-10.

Instruction D-1
Jury instruction D-1 was a circumstantial evidence instruction. Although D-1 is marked "W/D" (withdrawn), appellant contends the trial court "in an indirect manner refused ... jury instruction D-1." The record shows differently.
The six instructions submitted by appellant and considered by the trial court were D-3, D-4, D-5, D-7, D-9, and D-10. Jury instruction D-1 was not submitted and therefore was not refused. Because a trial judge should not be put in error on matters not presented to him, this Court holds the trial court committed no error on this point.

III.
In the present case, the jury was informed by instructions CS-1, C-13, S-3, D-3, and D-9 of the State's duty to prove its case beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence. This Court holds the jury was fairly instructed in the central issues of this case by the jury instructions proffered to and given by the trial judge and that no reversible error followed the trial court's refusal of any jury instruction.
Finding no reversible error, the Court holds the conviction and sentence of Virginia Guilbeau should be and is hereby affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, ROBERTSON and ANDERSON, JJ., concur.
SULLIVAN and GRIFFIN, JJ., not participating.
NOTES
[1] See Keys v. State, 478 So.2d 266, 268 (Miss. 1985) for a scholarly analysis of circumstantial evidence.