SMITH, Justice,
for the Court:
J.D. Hall was indicted for the offense of aggravated assault on a police officer but, at the conclusion of the State’s case in chief, the trial judge refused to allow the charge of aggravated assault on a police officer to be considered by the jury. Instead, the charge was reduced to ordinary aggravated assault. The State did not cross appeal the judgment on the reduction of the charge. At the conclusion of the presentation of all evidence, neither the State nor Hall requested a lesser included offense instruction of simple assault on a police officer. Accordingly, this Court need not consider these issues not before us. The trial court allowed Hall an instruction on self defense and Hall was allowed to argue that defense to the jury. The jury was not persuaded by Hall’s argument. Hall was convicted of aggravated assault and sentenced to serve one (1) year in the county jail, with six (6) months suspended. Feeling aggrieved, Hall appeals to this Court citing two assignments of error which warrant discussion:
A. THE STATE FAILED TO OFFER ANY PROOF OF CIRCUMSTANCES MANIFESTING AN EXTREME INDIFFERENCE TO HUMAN LIFE.
B. THE EVIDENCE PRESENTED AS A MATTER OF LAW WARRANTED A DIRECTED VERDICT IN FAVOR OF HALL ON THE BASIS OF SELF DEFENSE.
After careful consideration of the issues we find no reversible error exists and therefore affirm the conviction and sentence of Hall.

THE FACTS

This incident stems from an attempt by narcotics agent Ed Word, accompanied by a police dog and five uniformed officers including another drug agent, two deputy sheriffs, a constable, and Sheriff Troy Steed of Attala County, to serve a search warrant for controlled substances at the Wild Horse Club in Attala County.
Agent Ed Word of the North Central Narcotics Task Force testified that on December 14, 1990, he arrived at the Wild Horse Club to serve the warrant, which had been properly executed by a judge. Word was dressed in jeans, a black t-shirt with the agency’s emblem across the back and had a gold badge and gun attached to his belt. The county officers assisting were dressed in their police uniforms.
Upon arrival, the customers were asked to stand against the wall and the search was conducted. Word estimated the search took 26-30 minutes. As a result, marijuana was found in a purse belonging to the bartender. The club’s owner, Alberta Teague, was at *1225 home at the time of the search. Both Teag-ue and the bartender were arrested. The sheriff then ordered the club “shut down” and the officers and agents removed everyone except J.D. Hall, the defendant.
Word had met Hall “several times” before in connection with other police duties, and once at Hall’s residence. Hall was the last person remaining in the Wild Horse Club and Word asked him to leave. Word stated: “[JJust as soon as we asked, J.D. was taking his time. He was in no hurry to get out of the place. And I had to ask him, I believe, the second time to leave.” According to Word, on being asked to leave Hall stated, “It took you white mother f-s long enough to search this place and I’m going to take my mother f — ing time about leaving.” Word testified he told Hall, “no, he was fixing to leave now, and I reached and caught him by the arm and put my hand on his shoulder and started to the door with him.”
Word demonstrated in court and stated he “grabbed” Hall above the left wrist and put his hand on Hall’s shoulder. Hall then grabbed him from the front, placing his arms around Word’s back. Word stated he was six feet, four inches tall and weighed two hundred sixty (260) pounds. He estimated Hall was five feet, nine inches tall and weighed two hundred forty (240) pounds. Word continued: ‘Well, he had me picked up, and he went in a forward motion and slammed me into a pool table, picked me clear off the floor.” Word stated his left leg struck the pool table and he felt severe pain in his left knee. He felt a snap, held the side of the pool table and tried to stand back up. Hall grabbed at him again, so Word tried to knee Hall in the groin using the injured leg. He was not able to do so because he then realized his leg “had really been messed up.” Hall grabbed him a second time and put him back on the floor.
Word’s left leg was then bent in a forty-five degree angle from the knee. Hall stood grinning at him and Word recalled Hall had called him a son-of-a-bitch either after the first or second time he fell. Hall was then arrested for assault of a law enforcement officer. Word was taken to an Attala County Hospital, x-rayed, and transported to Jackson by ambulanee. He underwent surgery the next morning and had a plastic plate inserted on top of his kneecap with plastic bolts and pins. Word was on crutches for three (3) months and at the time of the trial had returned to limited duty.
Word testified at the time of the altercation with Hall, he was performing his duty in connection with the execution of the search warrant. He stated he was escorting Hall out because the sheriff had ordered the club closed and it needed to be secured. Word stated the sheriff was on the “control board” and was one of Word’s bosses.
Upon cross-examination, Word admitted the search warrant was for cocaine and related paraphernalia. He stated that approximately one ounce of marijuana was found at the club. All the customers of the club were lined up against a wall and ordered to take their shoes off and empty their pockets. Word testified the officers had a “right” to close the club because the owner had been arrested, so the club needed to be locked and secured. He did not recall taking any permits for a pool table and vending machine belonging to Hall off the wall of the club. Word admitted Hall told him he would leave, but “he would take his ... time.” Word denied that he first pushed Hall’s head into the wall, but admitted he initiated the first physical contact by trying to escort Hall out of the club. Word denied that both he and another agent verbally abused Hall during the entire search.
Word explained he did not write a report on the December incident until January due to being hospitalized in intensive care. Word explained the customers in the club were asked to remove their shoes and were searched for their own safety; it was not uncommon to find weapons kept in shoes. He estimated there were twelve people in the club on December 14.
Word’s initial treating physician stated Word sustained a severe leg fracture. He stated he would seriously doubt that Word could have kicked or kneed someone immediately after sustaining the injury. He stated Word was unable to walk on the leg upon arrival at the hospital.
*1226 Agent Barbara Jane Gant testified that she, Word, Hall and other officers were the only persons inside the club at the time of the incident. She stated she could not reach Word to assist after Hall threw him down the first time. Her description of the event went:
“I was between the pool table ... and Mr. Hall was against the wall, and Agent Word asked Mr. Hall to leave, and Mr. Hall did not want to leave. As a matter of fact he told us, you know, he would take his time leaving, and Agent Word put his hand on Mr. Hall’s shoulder and his arm, and he told him it was time for him to leave, and Mr. Hall then grabbed Agent Word, and he picked him up and threw him against the pool table, and Ed [Word] went down....”
⅜ ⅜ ⅝ ⅜ ⅜: ⅜
And then Ed propped his hand, his arm upon the pool table and he tried to get up and he did get up, and when he got up then J.D. Hall grabbed him again, and he shoved him back down again. I couldn’t get him cuffed because his arms were too big to go in my cuffs and I asked for assistance at that time. Ed never did get back up again.
Agent Gant stated the club was being closed after execution of the search warrant because it was the agency’s policy not to leave anybody on the premises who had no control over it. However, Gant admitted that the owner, Mrs. Teague, was never at the club that night during the time of the search but was arrested at her house. Thus, she was not overseeing the club. Gant stated she did not know Hall had any interest in the club and did not investigate this issue. Agent Gant admitted she did not know of any law that gave the agents the authority to force the customers to evacuate the club’s premises.
Robert Bennett, ■ Constable of Choctaw County, corroborated the testimony of Agent Gant. Bennett described the manner in which Hall faced Agent Word, put his arms around Word’s waist, lifted him and threw him against a pool table. Bennett testified Word was using minimal force to escort Hall to the club’s door at the time. Bennett added that after the marijuana was found in a purse, the sheriff entered and “he tore the license, took the license off the wall, and said, ‘this place is closed.’ ” Everyone left except Hall. Bennett repeated that Hall had used profanities in telling Word he would take his time leaving the club, to which Word replied, “No, you’re leaving now.” Bennett estimated the entire confrontation between Hall and Word took less than four seconds.
During cross-examination, Bennett stated the incident did not start when Hall was facing the wall, but while he was being escorted to the door. Bennett admitted he did not write a report on the December 14 incident until January 23rd. He stated he had not read the reports of Agent Word or Agent Gant at the time. Bennett stated no one could help Word because the fight happened very fast.
Attala County Sheriff Troy Steed testified he ordered the Wild Horse Club closed “since there was no one there to run the business.” Upon his initial arrival outside the club that night and a briefing of the events, Steed went directly to Mrs. Teague’s house. He arrived back at the club with Mrs. Teague after the fight had ended.
The State rested and the defendant moved to dismiss. The trial judge granted' the defense motion to the extent that the portion of the indictment charging assault against a law enforcement officer was dismissed.
Hall testified he was a “co-proprietor” of the Wild Horse Club and had a pool table and jukebox privilege license. Hall stated the officers ran into the club, “had their guns out and told everybody to get on the wall.” He did so and then emptied his pockets and took off his shoes as instructed. Hall stated he said to Agent Word, “Yeah, long time no see, Fat Boy,” and the search went on. During that time the drug dog “was jumping on this one guy’s back,” so while the officer kept telling him to face the wall, Hall admitted he kept turning around. He stated, “with a dog being handled like that I was somewhat afraid that he might, you know, put him on me.” Hall continued: “So, Officer Word walked over to me and he said, ‘If you don’t keep your face to the wall I’m going to bash *1227 your head into the wall.’ I said, “I hope you don’t put that dog on me.” After the search, Hall stated he began putting his things back in his pockets. Officer Word told him to hurry, that “ain’t nobody stole nothing from you or took nothing from you.” Hall testified he replied, ‘Well, you’re not qualified to steal or take anything from me. I’m going to take my time and make sure that my contents are here.” Hall continued:
“My shoes was against — this is the wall. When I went to pick up my shoes and turned and dropped them to start stepping into them, which you know anybody that overweight it’s a problem bending over putting on your shoes, and so I was putting my shoes on and that’s when I felt him grab me, and I saw the wall coming to me, and I turned around and I grabbed him and threw him off of me.”
Hall stated Word first grabbed him by the belt, not the arm and shoulder. He added: “I stepped back off of him. He got up and run to me and he kicked me in the nuts, and as he grabbed me I grabbed him again and threw him.” Hall testified the first time he threw Word “off of him,” it was because he was trying to stop his head from being pushed against the wall; the second time he was responding to Word kicking him in the groin.
Hall denied initiating any assault on Word: “As a matter of fact, I could have misused him, but I didn’t. I didn’t intend to hurt that man. I didn’t want him to break his leg or anything. I didn’t even know it was broken.” Hall stated that his brother and his girl friend were also present during the altercation. The girlfriend, Patricia Wilson, the club’s bartender, was also the owner of the purse in which the marijuana had been found. Wilson was arrested that night along with the club’s owner. Hall stated he was attempting to gather his belongings and leave the club, but guessed he “wasn’t moving fast enough” for the agents.
Upon cross-examination, Hall stated he did not inform the authorities that he had an interest in the club and didn’t want it closed. Hall stated his first cousin [apparently Mrs. Teague] was the owner and that he had keys to the place. Hall testified his brother was standing against the same wall as he had been and his girlfriend was between the pool table and the bar. His brother had been detained because he could not produce an I.D. and refused to give the officers his name; the girlfriend was to be arrested for possession of marijuana. According to Hall, both were still inside the club when the fight took place because they were told they were under arrest and were not to leave.
Patricia Wilson testified she was in the club at the time of the fight. Officers had told her “don’t go nowhere” and that she was under arrest. She described the incident: Hall was putting on his shoes and Word said everyone could go except for her. Word told Hall to “hurry up and ... get out.” Hall replied he was taking his time. “[A]bout that time Mr. Word took Mr. Hall and pushed him against the wall.” Hall turned-around and grabbed Word and the two scuffled. After the scuffle, Word kicked Hall “in between the legs.”
On further examination, Wilson admitted she and Hall had been boyfriend/girlfriend for two years at the time of the incident and were still dating. She stated the two were then living together but that she had not discussed the case with Hall. She stated she did not see other officers assisting. She did not recall seeing the agent with the dog near the scene. Wilson testified she first discussed what she had seen with Hall’s attorney, who had also been her attorney on the possession charge.
Testimony by Hall’s brother, Ronnie Hall, and Lamar Love, a friend, also present at the club, essentially corroborated that of Hall and his girlfriend, Wilson. Kenny Jones testified that after telling everyone to stand against the wall, “Officer Word came in with an attitude telling folks to turn around or he was going to run your head into the wall ... and so forth.” Testimony varied as to whether Hall and Wilson came out of the club together, and who was escorting them.
Josh Lepard, a deputy sheriff, testified he assisted in arresting Patricia Wilson, the bartender. He stated she was taken from the bar area and placed into a constable’s car along with Mrs. Teague, who was already in *1228 the vehicle. Lepard stated when he left the club with Wilson in custody, Hall was the only civilian remaining in the club. Sheriff Steed then instructed the officers to secure the building. Lepard testified Mrs. Teague, from inside the constable’s ear, told him to get her keys from her purse and lock the place. Lepard went back inside the club, came out from the kitchen just after he heard a “scuffle” and saw Agent Word lying on the floor. He stated Patricia Wilson was in the car during this time. Lepard stated that he, Agents Word and Gant, Constable Bennett with the dog, and other deputies were in the club at the time of the fight.
The defense rested and renewed its motion for directed verdict. The court overruled the motion, finding a jury issue had been raised by the evidence. The jury returned with their verdict finding Hall guilty of aggravated assault of Word after approximately forty minutes of deliberation. Counsel noted the maximum sentence for the offense was twenty (20) years imprisonment. The court pronounced sentence of one (1) year in the county jail, with six (6) months suspended. An appeal bond of one thousand dollars was set.
DISCUSSION
A. THE STATE FAILED TO OFFER ANY PROOF OF CIRCUMSTANCES MANIFESTING AN EXTREME INDIFFERENCE TO HUMAN LIFE.
Standard of Review
In passing upon a motion for directed verdict, all evidence introduced by the state is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and, if there is sufficient evidence to support a verdict of guilty, the motion for a directed verdict must be overruled. Guilbeau v. State, 502 So.2d 639, 641 (Miss.1987), citing Bayse v. State, 420 So.2d 1050, 1054 (Miss.1982).
Similarly, a new trial will not be ordered unless the Court is ‘convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.’ Guilbeau, 502 So.2d at 641, citing Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983).
Hall was charged with and convicted of the crime of aggravated assault, set forth in Miss.Code Ann. § 97 — 3—7(2)(a) as follows:
A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life....
The indictment against Hall charged only that he did “unlawfully, feloniously, purposely and knowingly cause serious bodily injury” to Officer Word. Instruction S-l mirrored the language in the indictment and informed the jury if those elements were proven beyond a reasonable doubt, Hall should be found guilty of aggravated assault.
Counsel for Hall concedes that Word suffered a serious injury and that, despite his claim of self-defense, a jury could have found Hall acted purposefully. However, Hall submits no jury could find from the facts presented that he acted “under circumstances manifesting extreme indifference to the value of human life.” Hall submits this is an essential element of aggravated assault which the State should have been required to prove. In support, Hall cites Harbin v. State, 478 So.2d 796 (Miss.1985). Therein, Harbin delivered an intentional beating to his victim and was convicted of aggravated assault. The indictment charged, in relevant part, that Harbin:
[Ujnlawfully, willfully, feloniously, purposely, knowingly and intentionally did assault [the victim] causing serious bodily injury....
Id. at 798.
Harbin is of little assistance to Hall. This Court on appeal determined the indictment was not fatally defective for failing to charge that Harbin acted “under circumstances manifesting extreme indifference to the value of human life.” In affirming the conviction, the Court did, however, expressly find that Harbin acted under such circumstances despite the fact that such language did not *1229 appear in the indictment, to the instant case, Hall argues proof of “circumstances manifesting an extreme indifference to human life” is thus required in an aggravated assault ease where no deadly weapon is involved. Applying Harbin
This Court affirmed Harbin’s conviction despite the fact that the indictment only charged purposeful, intentional conduct causing serious bodily injury. If an essential element of the crime had been omitted, obviously, the indictment would have been fatally defective. By the same token, the state would have failed to prove each and every element of the crime, as required. “It is hornbook criminal law that before a conviction may stand the State must prove each and every element of the offense.” Neal v. State, 451 So.2d 743, 757 (Miss.1984).
The statute further provides that to act “recklessly under circumstances manifesting extreme indifference to the value of human life” is another form of the crime of aggravated assault. Hall was not charged under this form of the offense of aggravated assault. The jury was justified in finding him guilty of aggravated assault under the means of proof required by the statute.
It is clear that the jury could properly find that Hall’s conduct, under the facts of this case, supported the proof required for the conviction of the charge of aggravated assault. When the 240 pound defendant Hall, picked up a 260 pound Officer Word, not in necessary self defense, and “slammed dunked” him into a pool table breaking his leg, then repeated the incident a second time by slamming Word to the floor, requiring hospitalization in the intensive care unit, and ultimately causing Word to miss three months of work, the jury could certainly have found that such conduct, clearly was purposefully and knowingly done with intent to cause serious bodily harm to Officer Word.
The fact remains that a jury issue was made and the jury resolved the issue of Hall’s guilt against him. Nothing more is required under § 97-3-7(2)(a). This issue is without merit.
B. THE EVIDENCE PRESENTED AS A MATTER OF LAW WARRANTED A DIRECTED VERDICT IN FAVOR OF HALL ON THE BASIS OF SELF DEFENSE.
Hall was partially successful in his motion for directed verdict in that the trial court granted it on the issue of whether he assaulted a law enforcement officer. The court found Hall had committed no crime in the officers’ presence and that the officers had “no authority to put their hands on this man or require him to leave these premises.”
Hall argues he had a right to resist Officer Word’s “illegal” attempt to forcibly remove him from the club. He further submits he used only “enough force to get Word off of him.” Hall concludes it is impossible from the evidence presented to find that he acted in other than a reasonable manner, necessary to stop the assault against him.
As the State points out, following the court’s ruling, the case simply became one of an assault by one citizen against another. The State submits the issue of self defense was properly submitted to the jury and that in light of the evidence clearly supporting the verdict, the trial court correctly refused to direct a verdict in favor of Hall.
The State is correct in stating the self defense issue was one for the jury to decide. As discussed above, Hall’s theory of self defense was presented to the jury in the form of Instruction D-3, which read:
The Court instructs the jury that J.D. Hall had the right to defend himself from any unwarranted or unjustified attack upon his person, and in defending himself from such attack had the right to use such force against his attacker as was reasonably necessary to repel such attack.
Therefore, unless you find beyond a reasonable doubt that J.D. Hall was not defending himself from an unwarranted and unjustified attack upon his person at the time which the injury to Officer Word occurred, and that he did not use reasonable force to repel the attack, then you must find the Defendant, J.D. Hall, not guilty.
The issues for the jury were whether Hall was acting in self defense and whether he *1230 used excessive force in repelling the attack on him. These are issues for the jury to decide. Ferguson v. State, 242 So.2d 448, 450 (Miss.1970).
Watkins v. State, 350 So.2d 1384 (Miss.1977), cited as support by Hall, stands for the proposition that a person in resisting an unlawful arrest may use such force “as may be necessary.” Id. at 1386. Characterizing the attempt by Officer Word to remove him from the club’s premises as an “illegal arrest,” Hall submits he used only reasonable force to resist those efforts, as was his right. However, Watkins also leaves no question that “the limited privilege of resisting arrest does not lend itself in support of ... violent resistance .... ” Id. Again, the issue in this case was not whether Hall could rightfully resist Officer Word’s efforts, but whether the amount of resistance Hall offered was reasonable under the circumstances. Whether or not the injury to Officer Word was the result of the use of reasonable force by Hall was a fact issue, properly submitted to the jury. The court did not err in failing to direct a verdict of acquittal based on Hall’s claim of self defense. This issue is without merit.

CONCLUSION

Hall’s attempts to attack the verdict through motions for directed verdict, j.n.o.v., and new trial were properly denied by the lower court. The State offered evidence supporting every material element of the crime as well as evidence refuting Hall’s claim that he used reasonable force to resist Officer Word.
The jury also had to determine whether Officer Word was using only minimal force in escorting Hall from the premises of the club and whether Hall used excessive, unreasonable or violent resistance in resisting Word’s effort, as contemplated under Ferguson and Watkins. The properly instructed jury was left to resolve Hall’s guilt or innocence based on the facts in evidence. Hall’s conviction of aggravated assault and sentence to one year in county jail with six months suspended, is affirmed.
CONVICTION OF AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF ONE (1) YEAR IN THE ATTALA COUNTY JAIL AND THE LAST SIX MONTHS OF INCARCERATION SUSPENDED, AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
DAN M. LEE, P.J., concurs in results only.