SMITH, Justice,
dissenting:
¶31. This case concerns the unfortunate, unnecessary and cold blooded shooting death of Eddie Wilson, Jr., the son of a City of Jackson police officer. The killing was committed by Jason Phalo and Moses Dab-ney, III, during the course of their theft of Wilson’s Chevrolet Blazer from his place of employment at Electric City. The majority concludes that the lower court erred in excluding trial evidence concerning Moses Dabney’s mental status as it pertained to the credibility of his statements to the police. The majority has further held that the circuit judge erred in refusing to grant a manslaughter instruction for Jason Phalo.
¶ 32. In my view, the Court of Appeals’ decision in upholding the trial court was correct. I respectfully dissent.
¶ 33. Consider first the question of Dab-ney’s statement. Prior to trial, at a suppression hearing, Dabney, citing borderline mental retardation, challenged the voluntariness of two statements given to police. The trial judge held both statements were voluntary and admissible, but neither statement was introduced at trial by the State. While in custody at the jail, Dabney acknowledged that a shirt given to Officer Clidell Conston by Phalo’s mother, was in fact his (Dabney’s) shirt and that he had been wearing the shirt at the time of the shooting. The State did not introduce this third statement either, but rather, it was introduced by Phalo over Dab-ney’s objection.
¶ 34. Dabney claims that because of his low mental ability and the fact that he was a special education student, his statement should be rendered involuntary and inad-missable. The majority, citing Cole v. State, 525 So.2d 365, 368 (Miss.1987), writes that Dabney was restricted by the trial judge from introducing at trial the evidence that he had introduced at the pre-trial hearing regarding his mental capabilities. Cole ad *740 heres to the premise that “Once a confession has been admitted, ‘either party has a right to introduce before the jury the same evidence which was submitted [at the suppression hearing]’ as well as any other evidence relative to the weight and credibility of the confession.” Id. (quoting Rhone v. State, 254 So.2d 750, 754 (Miss.1971)). This Court, in Cole, found this argument to be without merit because the issue of voluntariness was presented to the jury during questioning by the defense attorney. Cole, 525 So.2d at 368.
¶ 35. In my view, Cole is similar to the case at bar. Questions regarding Dabney’s age, whether his parents were present, whether his lawyer was present and whether the officer knew that Dabney was a special education student were all asked of Officer Con-sten during cross-examination by defense counsel. While the quote from Cole is indeed a correct statement of the law, it is not on point in the case at bar. Dabney’s confession was not introduced. Only the plaid shirt was introduced. Neither of Dabney’s other two statements were admitted at trial either. Admission of the shirt into evidence does not amount to a confession by Dabney. Only the first two Dabney statements were the subject matter of the pre-trial suppression hearing. Defense counsel never presented the third statement at the suppression hearing pre-trial. Defense counsel waited until cross-examination to raise this issue for the first time. Thus, the shirt’s introduction could not open the door to allow all of the supposed evidence Dabney wanted to introduce regarding his mental status.
¶36. Actually, the issue of evidence of Dabney’s retardation was irrelevant. Even if Dabney’s statement could be construed as a confession, Dabney clearly knowingly and intelligently waived his rights before making the statement to the police. Dabney claims the jury was prevented from hearing evidence of his low intelligence and that he would just agree to anything that he was told to do.
¶37. However, examination of the record on this very issue shows otherwise. When this issue first arose, defense counsel announced an agreed stipulation concerning the shirt. However, after consultation with Dab-ney, defense counsel promptly withdrew the stipulation. Defense counsel announced to the trial judge, “He [Dabney] won’t agree to this.” All this occurred in the presence of the trial judge who readily observed the situation in its entirety. This incident and others observed by the trial judge during trial is supportive of the trial judge’s finding that Dabney understood what he was doing, that his low intelligence level was not of such magnitude that he was severely handicapped, and that he voluntarily waived his rights regarding any statements.
¶ 38. Regardless, Dabney was allowed to have his two teachers testify. They both advised the jury that they were special education teachers who had taught Dabney. Considering the entirety of the record on this issue, the jury heard ample testimony and could have reasonably concluded that Dabney had a learning disability. The complete issue of Dabney’s mild retardation and low intelligence was presented to the jury regarding the voluntariness of the statement about the shirt. The jury obviously rejected Dabney’s claims.
¶ 39. More importantly, considering that it was the shirt that Dabney was trying to suppress at trial during cross-examination of a State’s witness, evidence that the shirt belonged to Dabney could not have played such a substantial role that it’s introduction affected the outcome of the case. See Stokes v. State, 548 So.2d 118 (Miss.1989); Holland v. State, 587 So.2d 848 (Miss.1991); McFee v. State, 511 So.2d 130 (Miss.1987). Here, Dabney was positively identified by Curtis Rhone as the person who shot Wilson when he attempted to regain possession of his stolen vehicle. His presence at the scene of the. murder is thus uncontested. The identification of the shirt in view of this eye witness identification is of little value by comparison purposes and of no practical or legal consequence. Even if the introduction could be considered error, which it is not, error, if any, is harmless beyond a reasonable doubt.
¶40. Next, we consider the majority’s claim of error by the trial court in failing to grant a manslaughter instruction to Jason Phalo. The Court of Appeals found that the trial court was correct, that there was no *741 evidence to warrant the giving of a manslaughter instruction. What are the facts in this record to warrant the reversal of this case for failure to give a manslaughter instruction? Plain and simple, there are no facts that support the giving of a manslaughter instruction. Here, the facts overwhelmingly support only that a cold blooded murder was committed by Phalo and Dabney. Eddie Wilson, unarmed at the time, was simply attempting to get back his stolen Blazer from Phalo and Dabney.
¶41. Curtis Rhone, who had been riding around with the group, was in a vehicle immediately behind the Blazer. He testified that there was a.38 caliber gun, the same as the murder weapon, at Phalo’s house immediately after the killing. Rhone also was asked, “Curtis, does Jason Phalo have a gun?” to which Rhone responded, “Yes.” Rhone was then asked, “Is it a revolver or a semi-automatic?” Rhone responded, “Semiautomatic.” Rhone also stated that he saw Wilson run up to the Blazer and try to get Phalo out. Phalo kicked out at the door. He heard one gunshot, and Wilson ducked and ran. Rhone saw Dabney fire several shots at Wilson. There was evidence presented that two guns were in the vehicle and one of them belonged to Wilson.
¶42. Mamie Hardges, an eyewitness who was in the car immediately behind the stolen Blazer and only five feet away from Phalo, testified that Phalo got out of the drivers’ side of the stolen Blazer with a gun in his hand. She stated that he fired a shot before he got out and that he ran from the scene with a gun in his hand. Hardges also managed to positively identify Phalo from a photo lineup. There was also testimony presented to the jury that Phalo, not Dabney, led police to one of the weapons which was recovered.
¶ 43. Jewel Davis, Clara Davis and Arthur Davis, all eyewitnesses to the killing, said they saw Dabney firing at Wilson. They all said the taller of the two men, which was Phalo, had a gun in his hand when he was running from the scene. Clara Davis said that the person she saw running away was wearing a plaid shirt. Dabney was wearing the plaid shirt on the day of the killing, the same shirt that was turned over to Jackson police by Phalo’s mother. The evidence before the jury was thus overwhelming that both Phalo and Dabney had guns at the scene and that both fired at Wilson.
¶ 44. Here, there is simply no evidentiary basis for the granting of a manslaughter instruction. Ormond v. State, 599 So.2d 951, 960 (Miss.1992); Mease v. State, 539 So.2d 1324, 1330 (Miss.1989); Harbin v. State, 478 So.2d 796 (Miss.1985). “[A] lesser included offense instruction is required “where a reasonable juror could not’ on the evidence exclude the lesser-included offense beyond a reasonable doubt.” Thorson v. State, 653 So.2d 876, 893 (Miss.1994) (quoting Mackbee v. State, 575 So.2d 16, 23 (Miss.1990)). This Court has also held that where a defendant has requested a lesser charge, this Court will look at the evidence in the light most favorable to the defendant in determining whether such an instruction is warranted. Davis v. State, 684 So.2d 643, 656 (Miss.1996). Phalo’s defense was that he simply was not the one who shot at Wilson. Nor was there any evidence that Phalo only aided or assisted Dabney in escaping from the scene of the killing, as suggested by Phalo in another alleged error raised on appeal. He offered no suggestion of accidental shooting. Here, considering the evidence in a light most favorable to Phalo, there is a total absence within this record of an evidentiary basis for giving a manslaughter instruction. Id. at 657. To the contrary, all the evidence suggests that the only possible instruction that the learned trial judge could have given was for murder.
¶45. My conclusion is that although this was not a perfect trial, Phalo and Dabney in fact did receive a fair trial. The glaring aspect of this case that stands out above all else is the senseless shooting of a young man, killed in the prime of his life during the all too common theft of a vehicle on the streets of Jackson. These two defendants could have fled themselves. Instead, Phalo and Dabney, when cut off, deliberately made the free will choice to kill in cold blood Wilson, who was unarmed and at the time had turned to flee for his life. The trial judge did not *742 err and the Court of Appeals should be affirmed.
¶ 46.1 respectfully dissent.
JAMES L. ROBERTS, Jr., J., joins this opinion in part.